**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Helen ALLEN, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael GUZMAN, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James ALLEN, Defendant-Appellant.**

**Nos. 85–1725, 85–1773, and 85–1776.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1985.

Decided May 7, 1986.

---

Michael B. Mann, Zavislak & Mann, Ltd., Oakbrook Terr., Ill., Sheldon Nagelberg, William H. Theis, Chicago, Ill., for defendant-appellant.

James M. Conway, Asst. U.S. Atty., (Anton R. Valukas–USA), Chicago, Ill., for plaintiff-appellee.

Before BAUER, CUDAHY and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

This case consolidates the appeals of three defendants, James Allen, Michael Guzman, and Helen Allen, who were convicted of various criminal charges arising from their participation in an armed bank robbery. James Allen pleaded guilty to four charges but contends that his sentence is improper. Michael Guzman contends that evidence was improperly admitted at his joint trial with Helen Allen. Helen Allen contends that the government did not present sufficient evidence to convict her, that she should have been granted a mistrial during the jury's deliberations, and that she was denied her sixth amendment right to confront witnesses against her at her sentencing hearing. We reject all of the defendants' claims and affirm the judgment of the district court.

### I.

James Allen, Helen Allen, Michael Guzman, and Anthony Genovese were all involved in planning and preparing to rob the Thornridge State Bank in South Holland, Illinois. James Allen, Guzman, and Genovese executed the robbery as planned, successfully removing $45,305 from the bank. To their surprise, however, a red dye/tear gas canister that had been placed with the money by a bank employee exploded in their car as they fled the scene. The car filled with red smoke and tear gas, and in the ensuing confusion James Allen drove past the bank again. The three men then were pursued by police officers just arriving on the scene. Gunfire was exchanged during the chase, and James Allen managed to elude the officers. The three men abandoned the car, which they had stolen earlier for use in the robbery, on the far south side of Chicago and were later picked up by Helen Allen and her son Larry at a nearby tavern.

Helen Allen then drove to the house of another son, Tommy Allen, in Indiana. At Tommy Allen's house, the three men dis-carded their red-stained clothing and divided several hundred dollars of the bank's money among themselves. Later, James Allen and Genovese separately returned to Helen Allen's house in Illinois while Guzman stayed at Tommy Allen's. At Helen Allen's house, James Allen and Genovese attempted to wash the red stain out of the bank's money using soap, bleaches, and coffee grounds.[1]

The next day, James Allen gave Genovese his share of the robbery proceeds and a gun. Helen Allen gave Genovese some shells for the gun and returned his wallet, which she had held for safekeeping while he participated in the robbery. Genovese gave Helen Allen $1,000. Later, Helen Allen drove Genovese to a train platform where he caught a train to Chicago.

On October 15, 1984 police in Richmond, Kentucky pulled over a car being driven by James Allen for speeding and weaving between lanes. The police asked him to perform a field sobriety test, which he did, and after failing the test he was arrested. Guzman was seated in the front passenger seat of the car, and the police also asked him to perform a sobriety test after observing him fumbling with his jacket and with something on the floor of the car. After Guzman took and failed the test, the police arrested him for public intoxication. At the time of their arrests, James Allen had $330 and Guzman had $204 in robbery proceeds on their persons. Police also found additional bank money throughout the car as well as an M–1 carbine, marijuana, and various drug paraphenalia.

Helen Allen was subsequently arrested and indicted for her role in the robbery. In January 1985, three months after her arrest, she spent some seven hours in a bar exchanging stained robbery money for quarters and clean bills and playing poker machines. The following day the bartender and her boss noticed that the bills given to them by Helen Allen smelled like bleach,

1. The use of red dye packs of the type employed by the bank in this case may give new meaning to the term "laundered money."

that some were whitish, some pink, and that some had been trimmed at the edges.

On October 19, 1985 Chicago police arrested Genovese for creating a disturbance in a bar. At the time of his arrest, Genovese was carrying the gun he had used in the robbery and several hundred dollars in red-stained bills. Some of the bills had been trimmed at the edges. Police subsequently searched Genovese's hotel room and found numerous rubber gloves and rags and a bottle of spot remover.

After his arrest and indictment James Allen pleaded guilty to conspiracy to commit bank robbery, bank robbery, possession of a firearm by a convicted felon, and interstate transportation of a stolen motor vehicle. He was sentenced to five years imprisonment on the conspiracy charge, twenty-five years imprisonment on the robbery charge, two years imprisonment on the firearms charge, and five years imprisonment on the auto theft charge, each sentence to run consecutively. Helen Allen was tried by a jury and convicted of conspiracy to commit bank robbery and bank robbery. She was sentenced to five years imprisonment on the conspiracy charge to be followed by five years probation for the robbery charge. Michael Guzman was tried jointly with Helen Allen and convicted by the jury of the same two charges and the additional charge of possession of a firearm by a convicted felon. Guzman was sentenced to five years imprisonment on the conspiracy charge, twenty-five years imprisonment on the robbery charge, and two years imprisonment on the firearms charge, each sentence to run consecutively. Genovese entered a plea agreement with the U.S. Attorney and the Cook County State's Attorney in exchange for his testimony at Helen Allen and Guzman's trial. Pursuant to the agreement, Genovese was sentenced to twelve years imprisonment on the federal charges and the State's Attorney agreed to a concurrent twelve year sentence for a pending attempted murder charge and other state charges.

## II.

Helen Allen's first argument on appeal is that the evidence at trial was insufficient to convict her of conspiracy to commit bank robbery and bank robbery. Helen Allen contends that she did not knowingly and intentionally participate in the conspiracy and did not participate in the actual robbery. In support of these contentions Helen Allen argues only that the testimony against her at trial by Genovese is not to be believed because of his motives for lying, and that without this testimony the government has not met its burden of proof.

In reviewing a claim of insufficiency of evidence in a criminal case, we determine only whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See United States v. Moya*, 721 F.2d 606, 610 (7th Cir.1983), *cert. denied*, 456 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). In this case, the evidence showed that prior to the robbery Helen Allen helped case the bank twice, discussed the escape route with the other defendants, provided guns and surgical gloves to be used in committing the robbery, participated in a discussion of the proposed robbery with James Allen, Guzman and Genovese in her home, and drove them to the stolen car immediately before the robbery. After James Allen, Guzman and Genovese robbed the bank and eventually eluded the police, James Allen telephoned Helen Allen and told her they were in trouble. She picked them up at a bar and drove them to Tommy Allen's house in Indiana. Later, at her own home, she helped wash the stained money and accepted a cut of the robbery proceeds. She drove Genovese to a train station, enabling him to flee to Chicago, and supplied him with bullets and dye remover while he was in Chicago through one of her daughters. Finally, she disposed of some of the stained bills at a bar after her arrest, repeatedly changing stained $20 bills for clean $10 bills and $10 worth of quarters.

Viewing these facts in the light most favorable to the government, we find that the jury had sufficient evidence to conclude that Helen Allen knowingly participated in the conspiracy to rob and the armed robbery of the Thornridge State Bank. The facts discussed above clearly show a knowing participation in the conspiracy, and, under 18 U.S.C. § 2, Helen Allen is liable as a principal for the armed robbery even though she did not execute the robbery herself because she aided and abetted the robbery. *See United States v. Beck,* 615 F.2d 441, 448–49 (7th Cir.1980). The fact that the government's main witness against her, Genovese, had possible motives for lying about her participation in the robbery, a fact that her attorney brought out during cross-examination of Genovese, affects only Genovese's credibility at trial. Absent extraordinary circumstances, this is a matter solely for the jury to evaluate. *United States v. Noble,* 754 F.2d 1324, 1332 (7th Cir.1985). Helen Allen testified and contradicted Genovese's version of the conspiracy and robbery, but the jury chose to disbelieve her testimony and credit Genovese's. We find nothing extraordinary in that; as we stated in *United States v. Moya,* 721 F.2d 606 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984), "[i]n every criminal trial, each party asks the trier of fact to believe its witnesses, to weigh its evidence more heavily than the opposition's evidence, and to draw certain inferences from the basic facts in evidence in order to accept its hypothesis regarding the events in dispute." We are satisfied that a rational trier of fact could have found Helen Allen guilty based on the evidence presented at trial, and therefore find that the evidence was sufficient *to* convict her.

### III.

Helen Allen also contends that the trial court erred in its responses to several communications from the jury during the course of the jury's deliberations. The jury retired on February 13, 1985 at approximately 3:00 p.m. On February 15 at approximately 3:15 p.m., the court received a note from an individual juror asking whether that juror would be able to leave on February 19 for a trip he had scheduled if the jury did not arrive at a unanimous decision by that time. After consulting with the parties' lawyers and obtaining their agreement as to a proper response, the trial judge sent a note to the jury that stated as follows: "I am hopeful and confident that the jury will be able to conclude its deliberations prior to 2–19–85. You and the other jurors should be advised that if necessary, the jury will deliberate tomorrow, 2–16–85."

Approximately one hour later, the jury sent another note to the judge, which stated: "We have not been able to reach a verdict on four counts and its appears we will be unable to do so." With the agreement of the parties, the trial judge responded by re-reading the following instruction, which he had previously read to the jury along with all the other instructions before the jury retired:

Ladies and gentlemen, the verdict must represent the considered judgment of each juror. Your verdict, whether it be guilty or not guilty, must be unanimous. You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong, but you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict.

The 12 of you should give fair and equal consideration to all of the evidence and deliberate with a goal of reaching an agreement which is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

At 5:30 p.m., the jury requested a transcript of Genovese's trial testimony and FBI 302 reports relating to Helen Allen. The jury's note stated that the jury felt review of these documents "may be of help" in resolving "the impasse in which we are embroiled." The court denied the jury's request, advising the jury to rely on the jurors' recollection of Genovese's testimony and stating that the 302 reports were not in evidence. At 7:40 p.m. the jury reached its verdict.

▆ Helen Allen contends that the trial judge should have declared a mistrial after the last communication because an "impasse" had been reached and the trial court's responses coerced the jury's verdict of guilty. The decision to grant a mistrial is within the broad discretion of the trial judge and is to be made in view of all the circumstances of the case. *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1972). Here, the trial court did not find that the jury was hopelessly deadlocked because the jury's note stated that the information requested might help the jurors reach a verdict. Tr. 8 (Feb. 15, 1985). In view of the nature of the jury's communication, we do not find that the trial judge abused his discretion by failing to grant a mistrial. Nor do we find that the statements read to the jury in any way coerced a verdict. The statements were evenhanded, concise responses to the jury's questions and were issued only after agreement by the parties.

▆ Helen Allen's principal argument is that re-reading the instruction relating to deadlock was improper and requires reversal. This instruction closely tracked the instruction approved en banc by this court in *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir.1973), but Helen Allen contends that the language of the trial court's instruction differed from that of the *Silvern* instruction, and that therefore we are compelled to reverse. At trial Helen Allen did not object to the court reading the instruction to the jury before the jury retired. Further, after the jury sent out the note stating that it had been unable to

reach a verdict on four counts, Helen Allen's attorney requested that the court re-read to the jury the instruction with which she now finds fault. Tr. 2 (Feb. 15, 1985). Accordingly, we review Helen Allen's claim that re-reading the instruction was improper only to determine whether this constituted "plain error." *See United States v. Torres*, 733 F.2d 449, 458 (7th Cir.1984).

"In deciding whether a defect in a jury instruction constituted a 'plain error,' we must examine the entire record before us, and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir.1978). Helen Allen does not identify the differences between the trial court's instruction and the *Silvern* instruction that she finds objectionable or argue that any variation changed the import of the trial court's instruction from that which was intended in *Silvern*. We are similarly at a loss to point out any significant difference between the two instructions. The two instructions are not identical, but the trial court's instruction is in substantial conformity with the *Silvern* instruction. We are mindful of *Silvern's* warning to the district courts of this circuit that a deadlock instruction not in conformity with the *Silvern* instruction is grounds for reversal, but we need not reach the issue of whether strict compliance with the exact language of the *Silvern* instruction is required because we find that the variance here was so insignificant that it did not constitute plain error. For this reason, we reject Helen Allen's contention that re-reading the deadlock instruction constituted reversible error.

## IV.

▆ Finally, Helen Allen contends that she was deprived of her sixth amendment right to confront witnesses against her when she was denied the opportunity to cross-examine her daughter, Roxanna Allen, at her sentencing hearing. Roxanna Allen was not called as a witness at trial, but the government wished to use her

grand jury testimony at the sentencing hearing to corroborate Genovese's trial testimony. The trial judge denied Helen Allen's request for a hearing at which she could call witnesses, stating:

As you know, we are permitted to listen to a variety of information. Its quality or lack thereof is for our own determination. I think the central facts of this case are what are the most significant, and it is essentially on those facts which I will base my decision. I do not intend to call any additional witnesses or get into the direct and cross of those other matters. I do not think it is necessary or appropriate in this circumstance.

Tr. 31 (April 24, 1985).

The Supreme Court has held that in making a sentencing determination, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (citations omitted). A convicted defendant does have the right to a fair sentencing process, and a sentence must be vacated if the defendant shows, "first, that the information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence." *United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir. 1984) (construing *Tucker* and *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). In order to protect this right, the defendant must be given the opportunity to rebut hearsay evidence that he claims is erroneous, but "this opportunity does not mean that the defendant can convert the sentencing proceeding into a full-scale evidentiary-type hearing." *United States v. Cusenza,* 749 F.2d 473, 478 (7th Cir.1984) (citations omitted).

In this case the trial judge afforded Helen Allen a full opportunity to rebut the government's presentation at sentencing. Her brief on appeal merely reargues her contention that Genovese's trial testimony was not believable, and asserts that she was unfairly denied an opportunity to support this contention at sentencing by cross-examining Roxanna Allen. This argument ignores the fact that Helen Allen's attorney cross-examined Genovese at trial, thereby exercising her sixth amendment right to confront witnesses against her and testing Genovese's credibility before the jury. The jury evaluated Genovese's credibility in reaching its verdict and Helen Allen was not entitled to a second trial of this or any other issue in the case at the sentencing hearing. We find no indication that the government presented any misinformation at the sentencing hearing or that the trial judge relied upon any erroneous information in passing sentence. We therefore affirm Helen Allen's conviction and sentence.

## V.

■ James Allen makes several arguments in support of his contention that his sentence was improper, none of which require lengthy discussion. First, James Allen argues that it is improper for a sentencing judge to impose consecutive sentences for armed bank robbery, a violation of 18 U.S.C. § 2113(a) & (d), and possession of a firearm by a convicted felon, a violation of 18 U.S.C.App. § 1202(a)(1). James Allen relies on *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), which held that consecutive sentences may not be imposed for armed bank robbery and use of a firearm during the commission of a felony, a violation of 18 U.S.C. § 924(c). James Allen, however, was convicted of possession of a firearm by a convicted felon, a violation of 18 U.S.C.App. § 1202(a)(1), not § 924(c). Section 2113(d) requires proof that the defendant used a dangerous weapon in committing a bank robbery, but does not require proof that the defendant has been convicted of a prior felony. Section 1202(a)(1) requires proof that the defendant has been convicted of a prior felony, but does not require proof that the defendant used the firearm to commit any other felony. Thus, "each statute

requires proof of an element which the other does not, and therefore the conduct leading to the offenses may be punished separately." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1930).

■ Second, James Allen argues that the trial judge abused his discretion in imposing the maximum sentence for conspiracy to commit bank robbery consecutive to the maximum sentence for the completed bank robbery. As noted in James Allen's brief, however, it is well-established in this circuit that conspiracy to commit an offense is a separate crime from the commission of the offense itself. *See, e.g., United States v. Daddano*, 432 F.2d 1119, 1129 (7th Cir. 1970). James Allen also does not contest that the statutes permit a trial judge to impose consecutive sentences for these two crimes. James Allen contends, however, that he should not have been sentenced to any term of imprisonment beyond the maximum sentence for bank robbery because the other offenses with which he was charged were all subordinate to that single bank robbery. For this reason, James Allen also contends that the trial judge abused his discretion in imposing the maximum sentences for auto theft and possession of a firearm by a convicted felon consecutive to the other sentences. He argues that the trial judge improperly imposed a harsh sentence upon him because he fired shots at a pursuing police officer after the robbery, blowing out the front driver's side window of the officer's patrol car, an occurrence which the trial judge considered an attempt to kill the officer. James Allen contends that in view of the fact that the officer was not killed, the trial judge abused his discretion in imposing consecutive sentences resulting in an aggregate term of 37 years imprisonment because 25 years imprisonment is the maximum penalty for an armed robbery in which no one is killed.

James Allen's argument initially appears to be nothing more than a request to reduce his sentence based solely on his poor marksmanship. Even if James Allen did not intend to kill the officer, we cannot agree that firing a shot at the officer during an automobile chase did not put the officer in extreme peril, especially in view of the fact that the bullet passed through the front driver's side window of the officer's car. The fortunate fact that the bullet missed the officer does not remove this incident from proper consideration as an aggravating factor by the trial judge in imposing sentence. Moreover, James Allen neglects to mention in his argument his eighteen prior arrests and eleven prior convictions for such crimes as armed robbery and aggravated battery, which also, we surmise, may have played some role in the severity of his sentence. We will not vacate a sentence that is within the statutorily prescribed limits unless the trial judge relied upon improper considerations or unreliable information in exercising his sentencing discretion or unless the trial judge failed to exercise any discretion at all in imposing sentence. *United States v. Harris*, 761 F.2d 394, 402–03 (7th Cir.1985). All of James Allen's sentences are within the statutorily prescribed limits. We do not find that either of the considerations discussed above was improper and hold that the trial judge properly exercised his discretion in imposing the maximum penalty allowed.

## VI.

■ Michael Guzman contends that the trial court improperly admitted into evidence the red-stained, bleached money confiscated by police in Kentucky after his arrest for public intoxication. Guzman argues that he should not have been arrested under Kentucky's public intoxication statute because he was not "manifestly" intoxicated to the degree that he posed a danger to himself or others, as required by the statute. Rather, Guzman asserts that he was chargeable only under a non-criminal Kentucky statute which provides that per-

sons intoxicated in public may be brought to a treatment facility or to their homes. If he had been charged under the latter statute, Guzman asserts that would not have been subjected to a search of his person.

Guzman's argument on appeal rests solely on his contention that the two Kentucky statutes apply to two different degrees of public intoxication, and that his degree of intoxication subjected him only to the strictures of the non-criminal statute. This appeal does not require this court, however, to reconcile the application of these two statutes to persons arrested for intoxication in Kentucky. We need only determine whether the Kentucky police officers had probable cause to arrest Guzman under the criminal public intoxication statute. *See Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). If they did, searching Guzman incident to the arrest did not violate the fourth amendment, and Guzman does not contend otherwise. Our review of the facts convinces us that the police did have probable cause to arrest Guzman.

While arresting James Allen, the police observed Guzman looking over his shoulder at the officers several times and fumbling nervously with his jacket and with something on the floor of the car. The officers feared he might have a weapon and asked him to get out of the car, which Guzman did. The officers stated that Guzman smelled of alcohol and was unsteady on his feet. He was given a field sobriety test and flunked. The officers then arrested Guzman for public intoxication. In view of these circumstances, we find that the police officers had probable cause to arrest Guzman for public intoxication. Therefore, the district court properly denied Guzman's motion to suppress the evidence seized incident to his arrest.

For the reasons stated above, we reject all three defendants' arguments and affirm their convictions and sentences.

Affirmed.