UNITED STATES of America, Plaintiff-Appellant,

v.

James D'ANTONIO, Defendant-Appellee.

No. 85–2219.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1985.

Decided Sept. 22, 1986.

James A. Graham, Glen Seiden & Associates, Chicago, Ill., for plaintiff-appellant.

Vilija Bilaisis, Asst. U.S. Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and GORDON, Senior District Judge.*

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

MYRON L. GORDON, Senior District Judge.

James D'Antonio appeals from his conviction on one count of knowingly possessing stolen goods moving in interstate commerce, in violation of 18 U.S.C. § 659, and one count of conspiring to violate 18 U.S.C. § 659, in violation of 18 U.S.C. § 371. He raises four claims on appeal: 1) insufficiency of the evidence, 2) prejudicial remarks by the prosecutor during closing argument, 3) prosecutorial abuse of discretion for failure to immunize a witness, and 4) coercion of the verdict by the trial judge. We affirm.

On the evening of January 18, 1985, several men gathered behind J & T Towing, a garage and tow yard at south 105th Street and Michigan Avenue in the City of Chicago. Their purpose was to transfer 2,160 stolen television sets from one semi-trailer to another. At the time they were stolen, the television sets were en route from California to Bensenville, Illinois. Law officers interrupted the act of transfering, and the appellant was among the seven men arrested and charged.

Of the seven men indicted, six pleaded guilty; the appellant did not. At his trial, two of those who had pleaded guilty, but had not as yet been sentenced, testified for the prosecution: Joseph Lawler and Fred Johanes. Mr. Lawler testified pursuant to a plea agreement with the government; Mr. Johanes had no such agreement. *See* June 6, 1985, Transcript, at pp. 25 and 119.

Mr. Lawler testified that about a week before January 18, 1985, the appellant and Tim Ferek, who was also indicted, picked him up in a car, and the three drove to J & T Towing. Mr. Ferek told Mr. Lawler in the car that appellant had initiated the plan to obtain the stolen television sets and that Mr. Ferek, in turn, had contacted Joseph Lawler. The latter also testified that on the way to J & T Towing, the appellant asked him whether James Townes could be trusted. Mr. Townes owned J & T Towing,

and Joseph Lawler had visited him a week earlier regarding the use of his property for the transfer.

Mr. Lawler further testified that the appellant asked him whether there were any viaducts which might interfere with the progress of a large semi-trailer truck between the expressway and J & T Towing. Mr. Lawler also testified that after the three arrived at J & T Towing and inspected the area, the appellant approved of the location for the transfer.

Fred Johanes testified that on the evening of January 18, 1985, he saw the appellant for the first time as he, the appellant and the others met at a restaurant before setting out for J & T Towing. He also testified that Mike Nardo and the appellant led a group of three vehicles to that destination. When they arrived, Mr. Johanes accompanied Marty Magers to the back of two semi-trailer trucks standing side by side in the J & T Towing tow yard. One of the trailers contained 2,160 stolen television sets, and the other was empty.

When Mr. Johanes arrived at the back of the trailers, he saw the appellant, along with Messrs. Nardo, Lawler, Ferek and Marzano standing at the back of the trailer which contained the stolen merchandise. At that point, Mr. Lawler went inside J & T Towing and returned with seven or eight J & T employees who knew nothing about the fact that the transfer involved stolen merchandise. Mr. Johanes testified that these new men along with the appellant and the others formed a line from the inside of the full trailer to the inside of the empty trailer and began transferring the stolen television sets. Mr. Johanes further testified that after lifting and passing twenty-five to fifty cartons full of television sets, the appellant pulled out of line claiming that his bad heart prevented him from continuing. Appellant's wife later testified that appellant had heart trouble. *See* June 10, 1985, Transcript, at p. 9.

## I. SUFFICIENCY OF THE EVIDENCE

■ "In reviewing a claim of insufficiency of evidence in a criminal case, we determine only whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Allen*, 797 F.2d 1395, 1398 (7th Cir.1986). In the case at bar, the evidence showed that prior to the evening of January 18, 1985, the appellant helped to plot and prepare for the transfer of stolen goods by accompanying Mr. Lawler and Mr. Ferek to the J & T Towing. Though only one witness, Joseph Lawler, gave testimony implicating the appellant in the conspiracy, the evidence he provided cogently demonstrated the appellant's knowing participation and heavy involvement in the conspiracy to receive and possess stolen goods behind J & T Towing on the evening of January 18, 1985.

■ As to the commission of the crime itself, the evidence presented to the jury was also sufficient to convict the appellant. Fred Johanes testified that the appellant physically assisted in the transfer of the stolen television sets from one semi-trailer to another. Even if we were to disregard this testimony, however, one "is liable for the acts of his coconspirators as long as he is a member of the conspiracy." *United States v. Andrus*, 775 F.2d 825, 850 (7th Cir.1985). The appellant does not contend that the crime for which he was tried did not occur. Nor does he contend that he was absent from J & T Towing on the evening of January 18, 1985, or that he otherwise withdrew from the conspiracy to receive and possess stolen television sets by taking some "affirmative action" to disavow or defeat its purpose. *Id.* Thus, even if the appellant did not physically assist in the transfer of the stolen television sets, the jury was entitled to find him guilty of violating 18 U.S.C. § 659 based on Mr. Lawler's testimony implicating him in the larger conspiracy.

The appellant's challenge to the sufficiency of the evidence is an attack on the credibility of the government's two main witnesses, Messrs. Lawler and Johanes. The appellant points to their interest in currying favor with the government before

sentencing, to Mr. Lawler's prior inconsistent statements to investigators, and to conflicting testimony given by other witnesses. However, in the absence of "extraordinary circumstances," these matters affect only the witnesses' credibility and, as such, are "solely for the jury to evaluate." *See Allen, supra,* 797 F.2d 1395, 1399, *citing United States v. Noble,* 754 F.2d 1324, 1332 (7th Cir.1985). The appellant has shown us nothing extraordinary about the testimony of Messrs. Lawler and Johanes that would justify our disturbing the jury's evaluation of their credibility.

## II. THE PROSECUTOR'S REMARKS DURING CLOSING ARGUMENT

The appellant contends that in the rebuttal portion of his closing argument the prosecutor impermissibly referred to Mr. D'Antonio's failure to testify on his own behalf. The prosecutor's challenged remarks were as follows:

Mr. Genson [defense counsel] during his closing and certainly during cross-examination, criticized the Government's witnesses because they don't remember perfectly consistently what happened, whether Mr. Lawler said something in his first interview when he talked to the agents at 2:30 in the morning, or he said it in a second interview.

*But, then, who does he present to you in the way of witnesses,* and what does he ask you in his closing to believe?

He asks you to believe a witness who can't even remember the fact that he was interviewed....

....

*Who else did the defendant present to you?*

Well, Ms. Barclay. Ms. Barclay said that she had seen Mr. Lawler out there several times, and that she never saw the defendant there with him....

....

Then you have Mr. Greer who came in and says, "Hey, I didn't see the defendant out there...."

....

Mr. Genson [also] relies heavily on the testimony of the police officer, Officer Louis....

June 10, 1985, Transcript, at pp. 86–88 (emphasis supplied).

■ The appellant's contention that the highlighted portion of the prosecutor's remarks violated his fifth amendment right against self-incrimination cannot be sustained. "The prosecutor['s] comments must be evaluated in light of the defense argument that preceded it." *Darden v. Wainwright,* —— U.S. ——, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). In this case, the record shows that the prosecutor was rebutting defense counsel's spirited attack on the credibility of the government's witnesses. As such, the comments were "invited by" and "responsive to" the closing argument of the defense. *See id.* at 2472. They "did not manipulate or misstate the evidence, nor did [they] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id.; compare United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1300–1302 (7th Cir.1985). In context, it is reasonably clear that the prosecutor was not alluding to Mr. D'Antonio's failure to testify, but rather to the inadequacy of the witnesses whom the defendant did call to testify.

Moreover, defense counsel failed to object to the challenged remarks either spontaneously or after the jury retired to deliberate. We consider the prosecutor's remarks in this case to have been within the bounds of fair argument.

## III. THE GOVERNMENT'S REFUSAL TO SEEK IMMUNITY FOR JAMES TOWNES

Appellant contends that the prosecution should have exercised its executive authority to seek immunization for James Townes following the latter's assertion of his fifth amendment right against self-incrimination. He relies on *United States v. Taylor,* 728 F.2d 930, 935 (7th Cir.1984) (as amended), *quoting United States v. Wilson,* 715 F.2d 1164, 1173 (7th Cir.1983), wherein this court restated that "a prosecutor's immuni-

zation decisions" will only be reviewed upon a showing of "substantial evidence ... that [his or her] actions amounted to a clear abuse of discretion violating the due process clause.... Such an abuse of discretion occurs when a prosecutor intends to use his authority under the immunity statute to distort the judicial fact-finding process." *See also United States v. Frans*, 697 F.2d 188, 191 (7th Cir.), *cert. denied*, 464 U.S. 828, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983).

At trial, defense counsel conceded that the only question he would have asked Mr. Townes was whether or not he had seen appellant at J & T Towing at any time on or before the evening of January 18, 1985. According to defense counsel, Mr. Townes would have answered the question in the negative. By refusing to seek immunity from prosecution for Mr. Townes, appellant contends, the prosecution prevented him from placing exculpatory testimony before the jury which would have impeached Mr. Lawler's testimony that appellant had accompanied him to J & T Towing about a week before the crime occurred.

■ This attempt by the appellant to show that the prosecutor's immunization decision was an abuse of discretion which distorted the fact-finding process is sorely lacking in proof. The fact that Townes may not have seen the appellant at J & T Towing does not establish that the appellant was not there or that the prosecution effectively silenced Mr. Townes in an attempt to manufacture a guilty verdict against the appellant. Such a scenario is simply too far-fetched to be believed.

In short, there is nothing in the record to suggest that by refusing to seek immunity for Mr. Townes the prosecution intended to upset the orderly presentation of the defense's case or to conceal from the jury facts favorable to the appellant. Mr. Townes' proffered testimony that he did not see the appellant at J & T Towing at any time on or before January 18, 1985, is of so little probative value that no significant inference may be drawn from the prosecution's refusal to seek immunity for

him. Thus, appellant has failed to make the requisite showing of "substantial evidence" that the prosecutor's actions "amounted to a clear abuse of discretion violating the due process clause." *Taylor, supra,* 728 F.2d at 935, *quoting Wilson, supra,* 715 F.2d at 1173.

IV. THE DISTRICT JUDGE'S DENIAL OF MOTION FOR MISTRIAL AND SUPPLEMENTAL COMMUNICATION TO THE JURY

After the jurors had deliberated for less than three hours, they sent Judge Getzendanner a note indicating that they could not come to a verdict. Defense counsel then moved for a mistrial on the ground that the jury had declared a deadlock. Judge Getzendanner denied the motion on the ground that the jury had not deliberated a sufficient length of time. Although appellant appears to challenge this ruling on appeal—his supporting briefs on appeal contain headings so indicating—the true substance of his argument is that a note the judge sent back in to the juryroom coerced the jury into returning a guilty verdict.

■ "The decision to grant a mistrial is within the broad discretion of the trial judge and is to be made in view of all the circumstances of the case." *Allen, supra,* 797 F.2d 1395, 1400. Here, the trial court did not find that the jury was hopelessly deadlocked; it ruled that it had not deliberated a sufficient length of time. We fully agree. It was by no means an abuse of discretion for the trial court to deny the defense's motion for a mistrial and to instruct the jury to continue its deliberations after only two and three-quarter hours of deliberations.

■ Nor do we find any error in the note that the judge sent back with the jury. The note simply stated: "Please continue your deliberations. I shall call you into the courtroom at 4:30 p.m. At that time the foreperson should be prepared to inform me as to the jury's progress. Thank you." This note was perfectly content-neutral and carried no plausible potential for coercing

984

"the jury to surrender their honest opinions for the mere purpose of returning a verdict." *United States v. Thibodeaux*, 758 F.2d 199, 203 (7th Cir.1985). Even if we were able (which we are not) to discern a slender threat of merit to the appellant's claim that there was something improper in the trial judge's response to the jury, it would wholly evaporate in light of the fact that defense counsel actually agreed to the contents of the note before it was delivered to the jurors. The trial court's note was an "even-handed, concise" response "issued only after agreement by the parties." *Allen, supra,* 797 F.2d 1395, 1400.

For the foregoing reasons, the appellant's conviction is

AFFIRMED.