**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald THIBODEAUX,**
**Defendant-Appellant.**

**No. 84–1869.**

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 16, 1985.

Decided Feb. 20, 1985 \*, Per C.R. 35.

Opinion March 20, 1985.

\* This appeal was originally decided by an unreported order on February 20, 1985. The Court has subsequently decided to publish the decision as an opinion.

Donald Thibodeaux, pro se. Duluth, Minn.

Scott F. Turow, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, ESCHBACH and FLAUM, Circuit Judges.

PER CURIAM.

A four-count indictment returned on December 13, 1983 charged defendant Donald P. Thibodeaux with three counts of willfully and knowingly failing to file tax returns in violation of 26 U.S.C. § 7203 and one count of willfully supplying false and fraudulent withholding information to his employer in violation of 26 U.S.C. § 7205. The evidence at trial showed that Thibodeaux earned wages of $26,810 in 1979, $28,169 in 1980 and $51,693 in 1981 yet failed to file federal income tax returns for any of those years. Thibodeaux also filed Employee's Withholding Allowance Certificates (W–4 forms) with his employer for each of the above years on which he claimed to be exempt from the withholding of taxes from his wages. Thibodeaux's defense at trial was that he did not believe that wages were income and accordingly, was not required to file tax returns or have federal taxes withheld from his wages. After a two day jury trial, Thidobeaux was found guilty on all counts. Thibodeaux appeals. We affirm.

Thibodeaux initially argues that he was denied the right to counsel of his choice because the district court refused to continue his case indefinitely while he sought counsel to represent him. Between Thibodeaux's January 12, 1984 initial appearance before the district court and the district court's February 13, 1984 appointment of a federal defender, Luis Galvan, to represent Thibodeaux, Thibodeaux asked for and received four continuances for the purpose of finding an attorney to represent him. The district court consistently admonished Thibodeaux that if he did not retain counsel within a reasonable period of time, counsel would be appointed to represent him. (Transcript of February 2, 1984 at 6; Transcript of February 9, 1984 at 3–4). When the district court finally appointed Galvan to represent Thibodeaux, it advised Thibo-

deaux that he could continue to seek counsel to represent him until the commencement of trial. (Transcript of February 13, 1984 at 6.) On March 23, 1984, the district court, faced with Thibodeaux's desire not to be represented by Galvan and his insistence on not appearing *pro se,* modified its February 13 order to make Galvan stand-by counsel. When trial commenced on April 18, 1984, Thibodeaux was still unrepresented and proceeded to trial *pro se* with stand-by counsel.

■■■ Thibodeaux may not manipulate his right to counsel to undermine the orderly procedure of the courts or subvert the administration of justice. The right to counsel as well as the right to counsel of one's choice may be waived if one able to afford counsel does not retain an attorney within a reasonable period of time. *United States v. Moore,* 706 F.2d 538 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983); *United States v. Brown,* 591 F.2d 307 (5th Cir.), *cert. denied,* 442 U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979); *United States v. Dinitz,* 538 F.2d 1214, 1223 (5th Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *United States v. Vallejo,* 496 F.2d 960, 964 (1st Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974); *United States v. Terry,* 449 F.2d 727 (5th Cir.1971). Thibodeaux was well able to afford counsel yet, despite numerous continuances, neglected to do so. Under the circumstances of this case, we conclude that the district court properly treated Thibodeaux's failure to retain counsel as the waiver of the right to counsel of his choice.

■■■ Thibodeaux also raises several related and equally unavailing right to counsel arguments. Thibodeaux argues that the district court denied him the right to counsel by refusing to allow "non-attorney" friends to sit with him at defense counsel table and assist him in the presentation of his defense. There is no constitutional right, however, to representation by non-lawyers or laymen. *United States v. Taylor,* 569 F.2d 448 (7th Cir.), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978). At any rate, the district court allowed Thibodeaux's non-lawyer friends to assist him by passing him notes during trial. Thibodeaux argues that he was unable to fully present his defense because the district court failed to apprise him of his rights during trial and of the motions and objections which he should have made. We disagree. The district court appointed stand-by counsel for Thibodeaux and our examination of the trial record reveals that the district court assisted Thibodeaux throughout the case, insuring an adequate and fair trial.[1]

Thibodeaux objects next to the district court's jury instructions on the element of willfullness. Even assuming that our consideration of this issue is not barred by Thibodeaux's failure to object to the instruction, *see e.g. United States v. Hyman,* 741 F.2d 906, 911 (7th Cir.1984); *United States v. Kuecker,* 740 F.2d 496, 503 (7th Cir.1984); *United States v. Brown,* 739 F.2d 1136 (7th Cir.1984), this argument is meritless. Thibodeaux objects to the use of the word "may" in the instructions, contending that a good faith misunderstanding of the law must necessarily negate the element of willfullness.[2] *See e.g. United States v. Pomponio,* 429 U.S. 10, 13, 97 S.Ct. 22, 24, 50 L.Ed.2d 12 (1976); *United*

---

**1.** Thibodeaux argues that the district court committed "perjury" when it signed an order appointing Galvan to represent him. The order states that the defendant has satisfied the Court that he or she is financially unable to employ counsel. Thibodeaux points out that he never represented to the court that he was financially unable to retain counsel.

This argument is absolutely irrelevant to the merits of the case and particularly inappropriate in light of the district court's efforts to protect Thibodeaux's rights during trial.

**2.** The district court instructed:

The term 'willfully' for purposes of these instructions means voluntarily, deliberately and intentionally, as distinguished from accidentally, inadvertently, or negligently.

Willfulness in the context of a failure to file a proper income tax return simply means a voluntary intentional violation of a known legal obligation to file such a return.

A good faith misunderstanding of the law based on reasonable grounds *may* negate willfulness. However, disagreement with the law

*States v. Moore,* 627 F.2d 830, 833 n. 1 (7th Cir.1980). Thibodeaux argues that the jury construed "may" to mean "can," "possibly" or "is capable of."

■■■ In examining the propriety of jury instructions, we view the instructions as a whole and "as long as the instructions treat the issues fairly and accurately, they will not be interfered with on appeal." *United States v. Croft,* 750 F.2d 1354, 1366 (7th Cir.1984). Here, the unequivocal language of the instructions, reproduced in full below, that "if the defendant acted reasonably and in good faith believed that his ... wages were not income ... then the defendant did not act willfully" clearly resolves any ambiguity which might possibly arise from the use of the word "may." We find no error in the district court's jury instructions.

Thibodeaux argues next that the district court committed reversible error in failing to interrogate the jurors concerning a comment inadvertently made in the presence of a juror. During noon recess of the first day of trial, Agent Conway, an IRS agent who had testified during the government's case-in-chief, was in the elevator with a juror. An Assistant United States Attorney, dressed in street clothes and who had been in the audience during Conway's testimony, was also present. The Assistant United States Attorney asked Conway, "Are you having fun up there?" (Trial Transcript at 152–155). Conway placed his fingers to his lips indicating silence and no further conversation ensued. When court reconvened, the government brought the communication to the judge's attention and suggested that the court inquire whether any jurors overheard the remark. After discussing the issue with Thibodeaux, the district court declined to interrogate the juror because interrogation would simply highlight the comment in the juror's minds. The district court noted that the comment was innocuous, ambiguous and made by an individual who would not be associated with the government in the juror's mind because of his casual dress. The district court concluded that interrogating the juror would merely highlight the comment in his mind and that the comment was harmless. (Trial Transcript 152–155).

Since Thibodeaux failed to object to the district court's decision not to interrogate the juror, we need only consider this issue if the district court's decision not to interrogate the juror constitutes plain error. *United States v. Shue,* No. 83–2053, slip op. at 13–15 (7th Cir. Oct. 12, 1984); *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984). Thibodeaux cites to *United States v. Remmer,* 350 U.S. 377, 379, 76 S.Ct. 425, 426, 100 L.Ed. 435 (1956) for the proposition that extrajudicial juror communications are presumptively prejudicial and mandate reversal. *Remmer* involved the attempted bribery of a juror. During a recess in trial, the FBI interrogated a juror concerning the alleged bribery. The juror subsequently told another juror that he was under "terrific pressure." 350 U.S. at 381, 76 S.Ct. at 427. By contrast, in the present case, a juror simply overheard an ambiguous and otherwise innocuous comment.

■■■ A district judge has substantial discretion in handling extrajudicial juror communications. *United States v. Fusaro,* 708 F.2d 17 (1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983); *United States v. Read,* 658 F.2d 1225 (7th Cir.1981); *United States v. Corbin,* 590 F.2d 398, 400 (1st Cir.1979). Under the circumstances of this case, the district

does not constitute good-faith misunderstanding of the law because it is the duty of all persons to obey the law whether or not they agree with it.

The defendant's theory of the defense is that he did not act willfully because he reasonably and in good faith believed that his wages were not income for purposes of the Internal Revenue Code, and that therefore he was not liable for any taxes during the years in question and had no duty to file an income tax return, and properly claimed an exemption from withholding on his Form W–4 for the years in question.

If the defendant acted reasonably and if the defendant reasonably and in good faith believed that his wages were not income and that he had no obligation to file an income tax return and that he could claim exemption from withholding, then the defendant did not act willfully.

(Emphasis added) (R. at 42).

court did not err in declining to interrogate the juror.

 Thibodeaux's final argument is that the district court's supplemental jury instructions were erroneous as violative of *United States v. DiLapi,* 651 F.2d 140 (2d Cir.1981) and as coercing a verdict. During jury deliberations, the foreperson notified the court that the jury had reached a verdict on Counts One to Three but was deadlocked on Count Four. The district court assembled the parties and discussed how to proceed including the possibility of a partial verdict return. The court recessed to allow Thibodeaux to consult with stand-by counsel but stated, "Let me write them [the jurors] in a note and tell them to continue their deliberations for the time being but I will be calling them out shortly...." (Trial Tr. at 320).[3] Before court reconvened, the foreperson notified the court that the jury had reached a verdict on all counts. The jury returned a verdict of guilty on all counts.

Thibodeaux cites to *DiLapi* for the proposition that the district court's supplemental jury instructions were erroneous. In *DiLapi,* the Second Circuit, citing Fed.R. Crim.P. 31(b),[4] admonished that a jury should neither be encouraged or discouraged to return partial verdicts, but rather, the court should simply explain what the jurors' options are. *DiLapi,* however, is inapplicable to the present case as involving multiple defendants and the concomitant constraints of Fed.R.Crim.P. 31(b), neither of which is even arguably applicable to this case. Construing Thibodeaux's *pro se* briefs liberally, *Bates v. Jean,* 745 F.2d 1146, 1150–1151 (7th Cir.1984), Thibodeaux is really arguing that the district court's

supplemental instructions coerced a verdict on Count Four in violation of *United States v. Silvern,* 484 F.2d 879 (7th Cir. 1973) (en banc) and its progeny. The relevant inquiry is whether "the court's communications pressured the jury to surrender their honest opinions for the mere purpose of returning a verdict." *United States v. Hamann,* 688 F.2d 507 (7th Cir. 1982). We think not. The court's note to the jurors was noncommittal, favoring neither prosecution nor defense, nor suggested that the jurors should surrender their opinions to reach a verdict. We find no error in the district court's supplemental instruction.

We AFFIRM Thibodeaux's conviction on all counts.

---

3. Neither the foreperson's note relating to the deadlock on Count IV nor the district court's response to it are part of the record. This leads the government to suggest that the district court never actually sent its note to the jury telling them to continue deliberations. The government notes that Thibodeaux failed to file a statement pursuant to Fed.R.App.P. 10(e) modifying the record to reflect that the district court did, in fact, send a note to the jury.

The record, however, clearly reflects the district court's decision to send a note to the jury. Trial Transcript at 320. There is no indication

in the record that a note was not sent and, accordingly, we assume that the district court did in fact send the note at issue to the jury.

4. Fed.R.Crim.P. 31(b) provides:

Several Defendants. If there are two or more defendants, the jury at any time during its deliberations may return a verdict or verdicts with respect to a defendant or defendants as to whom it has agreed; if the jury cannot agree with respect to all, the defendant or defendants as to whom it does not agree may be tried again.