**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Benjamin Barry KRAMER, Randy Thomas Lanier, Eugene Albert Fischer, and Kay Dee Bell, Jr., Defendants–Appellants.**

Nos. 88–3444 to 88–3446, 89–1025 and 89–2752.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1990.

Decided Jan. 30, 1992.

As Amended Feb. 4, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc April 14, 1992.

Mary C. Bonner, Fort Lauderdale, Fla., Richard O. Hart, Hart & Hart, Benton, Ill., Albert J. Krieger (argued), Susan W. Van-Dusen, Miami, Fla., Robert A. Drew, Marion, Ill., J. David Bogenschutz, Fort Lauderdale, Fla., for Benjamin B. Kramer.

Nathan P. Diamond (argued), Miami, Fla., Robert I. Kalina (argued), Edward M. Chikofsky (of counsel), New York City, for Eugene A. Fischer.

Michael Stepanian, Joseph J. Wiseman, San Francisco, Cal., Burton H. Shostak (argued), D.J. Kerns, Moline, Ottsen, Mauzé, Leggat & Shostak, St. Louis, Mo., for Kay D. Bell, Jr.

Jack Carey, Belleville, Ill., Joseph Beeler, Miami, Fla., Robert W. Ritchie (argued), W. Thomas Dillard, David M. Eldridge, Ritchie, Fels & Dillard, Knoxville, Tenn., for Randy T. Lanier.

Robert T. Coleman, Asst. U.S. Atty. (argued), Crim. Div., Fairview Heights, Ill., Michael C. Carr, Asst. U.S. Atty. (argued), Benton, Ill., for U.S.

Before CUMMINGS, CUDAHY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Appellant Randy Thomas Lanier was a rising star on the auto-racing circuit in the early 1980's; indeed, in 1985, he was the rookie of the year at the Indianapolis 500. Lanier apparently did not regard auto racing as a full-time job. Together with appellants Benjamin Barry Kramer, and Eugene Albert Fischer, he directed a vast enterprise which imported several hundred thousand pounds of marijuana into the United States in the 1980's. Appellant Kay Dee Bell, Jr. assisted the enterprise in importing two loads of marijuana.

A jury found Lanier, Kramer, Fischer and Bell guilty of conspiring to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). The jury also found that Lanier, Kramer and Fischer had participated as principal administrators, organizers, or leaders of a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. Finally, the jury found Lanier guilty of conspiring to defraud the United States under 18 U.S.C. § 371 by impeding the United States in its assessment and collection of revenue.

As required by § 848(b), Lanier, Kramer and Fischer were each sentenced to a mandatory term of life imprisonment without possibility of parole. Pursuant to §§ 846 and 841(a)(1), Lanier and Kramer were sentenced concurrently to forty years imprisonment, Fischer was sentenced concurrently to thirty-five years imprisonment, and Bell was sentenced to twenty-five years imprisonment. Lanier was also sentenced to serve five years for the violation of § 371, to run consecutively to his sentence under §§ 846 and 841(a)(1). In addition, forfeiture judgments were entered against Lanier and Kramer in the amount of $60,000,000 each and against Fischer in the amount of $30,000,000. Appellants raise numerous challenges to their convictions. We find their arguments unpersuasive and affirm in all respects.[1]

## I.

In 1982, Lanier and Kramer formed a partnership which purchased marijuana from sources in Colombia and imported it to the United States through several locations. Kramer arranged to have marijuana brought from Colombia to Florida on his boat, the "Ursa Major," while Lanier provided the initial financing for the purchase of the marijuana and distributed it to his customers upon arrival. The enterprise established by Lanier and Kramer imported two boatloads of marijuana on the "Ursa Major" to Melbourne Beach, Florida from Colombia.

The partnership's first transaction took place in April, 1982 when Lanier and Kramer arranged to bring 15,000 pounds of marijuana from Colombia to Melbourne Beach, Florida. Kramer and Lanier arranged for the load to be picked up in Colombia, unloaded in Melbourne Beach, and then distributed. Lanier purchased boats to ferry the marijuana from the "Ursa Major" to the beach where Kramer coordinated the unloading of the marijuana into waiting vans. A second load of 20,000 pounds of marijuana was imported in the same manner in August, 1982. Some of the marijuana from this load was purchased by a co-conspirator, Conrad Ingold, and was delivered by him to the Staunton, Illinois area.

Fischer joined Lanier and Kramer in orchestrating the next five transactions, in which a tugload and four bargeloads of marijuana, were brought into the United States. In the third transaction, which took place in the spring of 1983, Lanier, Kramer and Fischer imported 30,000 pounds of marijuana into Bridgeport, Connecticut and arranged its distribution. In the fall of 1983, they brought a bargeload of approximately 14,000 pounds of marijuana to New York. Again, Lanier and Kramer set up its importation and distribution. Some of the marijuana from that load was transported to the St. Louis area for distribution.

In the fifth transaction, which took place in 1984, Lanier, Kramer and Fischer brought a bargeload of 147,000 pounds of marijuana to San Francisco. Bell, who owned Harbor Sand and Gravel Yard, located in San Francisco, assisted the enterprise in unloading the barge and transporting its contents to customers. Bell's tugboat brought the barge, upon its arrival in San Francisco, to his Sand and Gravel Yard where it was unloaded. Bell also helped Lanier and Kramer arrange the transportation of the marijuana from the Yard. Some of the marijuana imported in the San Francisco load was delivered by customers of Lanier and Kramer to Millstadt, Illinois. Over $50 million was received from the sale of that load of marijuana.

The sixth transaction took place in the spring of 1985. Lanier, Kramer and Fischer imported a bargeload of approximately 152,000 pounds of marijuana to New Orleans. Kramer was responsible for the purchase of the marijuana in Colombia while Fischer rented dock space in New Orleans and arranged to bring the barge to the dock. Lanier directed the unloading of the barge. Customers of the enterprise shipped some of the marijuana in that load to Millstadt, Illinois.

The seventh transaction occurred in November 1986. The appellants imported a

---

1. Lanier does not appeal his tax fraud conviction pursuant to 18 U.S.C. § 371.

bargeload of approximately 130,000 pounds of marijuana to San Francisco. Kramer sent an agent to Colombia to acquire the marijuana. When the load arrived, Bell arranged for the cover load of lumber to be unloaded from the barge. Fischer provided workers who removed the marijuana from the secret compartments of the barge and placed it in containers which were loaded onto flatbed trailers at Bell's Sand and Gravel Yard. Bell also assisted Fischer in loading the containers onto the flatbed trailers. Lanier and Kramer were principally responsible for transporting the marijuana from the Sand and Gravel yard. The enterprise collected $34,795,000 from this load. Kramer received $12,500,000, while Fischer split $10,253,000 with George Brock.[2] Lanier received the balance of the proceeds.

## II.

Lanier, Kramer and Fischer raise two objections to their § 848 convictions based on the premise that § 848(b) is a substantive offense. They argue that their § 848 convictions violated the constitutional prohibition on ex post facto laws.[3] They also argue that their constitutional rights to be tried in the district in which the § 848 offense was committed were violated. As we shall explain, both of these objections fail.

First, we consider the appellants' ex post facto objection to their convictions, under § 848, for being the principal administrators of a CCE. Specifically, the appellants object to the district court's instructions on certain elements of § 848.

There are several elements necessary for a conviction under § 848, and other factors which require the application of § 848(b). First, the government must prove that the defendant engaged in a CCE. *See* § 848(d). Under § 848(d) a person is engaged in a CCE if:

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and (B) from which such person obtains substantial income or resources.

§ 848(d). Section 848(a) sets forth the penalties for some of the persons who are found to have engaged in a continuing criminal enterprise under § 848(d). Section 848(a) provides that "[a]ny person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, ...." Section 848(b), which became effective on October 27, 1986, is titled "Conditions for life imprisonment for engaging in continuing criminal enterprise." It provides for a mandatory life sentence for a person engaging in a CCE if:

(1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and (2)(A) the violation referred to in subsection (d)(1) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, or (B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million in gross receipts during any twelve month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title.

---

**2.** George Brock (a/k/a "Tom") was indicted with the appellants for engaging in a CCE as a principal administrator, organizer, or leader but did not stand trial because he remained a fugitive from justice.

**3.** All citations to, and quotations from, § 848 hereinafter refer to that statute as applicable here. Section 848 was substantially amended by the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181, but those amendments are not pertinent to this opinion.

On the application of § 848(b) the district court instructed the jury that:

> To sustain the charge of being a principal administrator, organizer, or leader of a continuing criminal enterprise as charged in Count I, the government must prove, in addition to the fact that the defendant was engaged in a continuing criminal enterprise, the following propositions:
>
> First, that a defendant was the principal administrator, organizer, or leader of the continuing criminal enterprise or was one of several such principal administrators, organizers, or leaders of a continuing criminal enterprise that continued after the effective date of the statute, October 27, 1986;
>
> Second, that after October 27, 1986, a defendant committed *a violation* of importing marihuana, distributing marihuana or conspiracy to distribute marihuana as charged which involved at least 30,000 kilograms (66,000 pounds) of marihuana[;] *or* that the enterprise in which a defendant was a principal or one of several principal administrators, organizers, or leaders received $10 million in gross receipts between October 27, 1986, and including February 1987, for the importation or distribution of marihuana.

The district court instructed the jury on the continuing series element of § 848(d) that:

> Thus, you must find beyond a reasonable doubt that the defendant is guilty of conspiracy to distribute more than 1,000 pounds of marihuana as charged in Count II and/or that he is guilty of knowingly and intentionally distributing marihuana or importing marihuana as set forth in paragraphs A through R of Count I of the Indictment and that this conduct, together with any additional violations of the drug laws constituted a total of three or more violations of the federal drug laws committed over the period of time charged in Count I with a single or similar purpose. This will constitute a finding that a defendant engaged in a continuing series of violations.

Appellants contend on appeal that § 848(b) is a substantive offense, and is not a sentencing enhancement provision. The government disagrees. The appellants maintain that if we agree that § 848(b) is a separate substantive offense, their convictions violate the ex post facto clause because the continuing series instruction did not require the jury to find that the appellants engaged in two predicate acts after October 27, 1986, the effective date of § 848(b). They argue that the § 848(b) instruction was also defective because it required the jury to find only that after § 848(b) became effective, a defendant committed one violation of importing, distributing, or conspiring to distribute marijuana *or* that the enterprise received $10 million in gross receipts from the importation or distribution of marijuana between October 27, 1986, and February 1987.

The appellants principally rely on *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990) for the proposition that § 848(b) is a substantive offense, and not a sentencing enhancement provision. We do not believe that § 848(b) is a substantive offense, *see United States v. Lowe*, 860 F.2d 1370, 1377 (7th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), and *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986), but we find that we do not need to reach that issue.[4] Assuming, *arguendo*, that § 848(b)

---

4. Section 848(b) appears to us to be a sentencing enhancement provision under the analysis set forth in *Lowe*. 860 F.2d at 1377. The test set forth in *Lowe* was designed to determine whether Congress intended to create a separate offense or a sentencing enhancement provision. First, the title of § 848(b), "Conditions for life imprisonment for engaging in a continuing criminal enterprise," and the titles of the preceding bills indicate that it is a sentencing enhancement provision. Second, § 848(b) contains an explicit reference to conviction under the predicate provision § 848(d). Third, the penalty contained in § 848(b), while not a multiplier of the penalty for violating § 848(a), merely limits the district court's discretion in sentencing within the range set forth in § 848(a). Fourth, although § 848(b) does not contain procedures for a separate hearing to determine if the enhancement factors are present, it resembles several other sentencing

is a substantive offense, the appellants's ex post facto objections to their convictions must fail because they engaged in a continuing offense.

It is well settled that the ex post facto clause is not applicable to offenses which began before the effective date of a statute and continue thereafter. *See United States v. Baresh*, 790 F.2d 392, 404 (5th Cir.1986) ("because conspiracy is a continuing crime, a statute increasing the penalty for a conspiracy beginning before the date of enactment but continuing afterwards does not offend the [ex post facto clause]"); *United States v. Ferrara*, 458 F.2d 868, 874 (2d Cir.), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972); *United States v. Pace*, 898 F.2d 1218, 1238 (7th Cir.), *certs. denied*, — U.S. ——, 110 S.Ct. 3286, 111 L.Ed.2d 795, —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990); *United States v. Canino*, 949 F.2d 928, 951 (7th Cir.1991). The appellants argue that a CCE can only become a continuing offense if the government demonstrates that the defendant engaged in a continuing series of violations after the effective date of § 848(b).

We disagree. In *Pace*, we held that a CCE, like a conspiracy, is a continuing offense. 898 F.2d at 1238. We noted that a CCE and a conspiracy are similar crimes because both punish agreements to commit crimes and both involve continuing conduct. *Id. See also United States v. Johnson*, 537 F.2d 1170, 1175 (4th Cir.1976) (holding that the original version of § 848 could be applied to enterprises beginning before its effective date, but which continued thereafter). *Pace* requires only that the government prove that the enterprise continued until after October 27, 1986, the effective date of § 848(b). *Pace*, 898 F.2d

at 1238. There is no requirement that the government prove that the appellants engaged in two predicate acts after the effective date of § 848(b). *See id.; Canino*, at 951 (holding that the government need not prove the defendant's involvement in a conspiracy after the effective date of an enhanced penalty provision). The instruction given by the district court required that the jury find that the appellants engaged in a CCE until after the effective date of § 848(b). The evidence was sufficient to show that the appellants engaged in a CCE from 1980 until February 1987, long after the effective date of § 848(b). Thus, we hold that the appellants engaged in a continuing offense.

*Torres*, in which § 848(b) convictions were found to violate the ex post facto clause, is not to the contrary. The instructions in *Torres* allowed the jury to apply § 848(b) if they found that the appellants were principal administrators, organizers, or leaders of the organization "sometime during the 12–month period [from June 24, 1986 to June 23, 1987]." 901 F.2d at 226. The second circuit held that the instruction violated the ex post facto clause, *id.* at 227, because the jury was not required to find that the appellants engaged in a continuing offense. The court further held that there could not have been a continuing offense because the jury was not instructed that the appellants had to function as principal administrators, organizers, or leaders of the Torres organization *after* § 848(b) became effective. *See id.* By contrast, the district court's instruction in this case required the jury to find that the appellants had been the principal administrators, organizers, or leaders of a criminal enterprise that had continued after October 27, 1986,

enhancement statutes, including 21 U.S.C. § 841(b) and 18 U.S.C. § 2113, which do not require a hearing. Indeed, we have recently questioned the need to examine statutes for hearing provisions. In *Lowe*, we held that 18 U.S.C. § 924(e), which does not contain a provision for a separate hearing on the enhancement factors, is a sentencing enhancement provision. *Id.* at 1378. *See also United States v. Acevedo*, 891 F.2d 607, 611 (7th Cir.1989) (§ 841(b) is a sentencing enhancement provision). The Sentencing Guidelines, which took effect on No-

vember 1, 1987, clearly contemplate a sentencing hearing under Rule 32 of the Federal Rules of Criminal Procedure for all convictions to determine whether enhancement factors are present. Because of the elaborate procedures established by the Sentencing Guidelines for determining enhancement factors, it is no longer appropriate to examine recently enacted statutes for a hearing requirement to determine whether Congress intended to enact a sentencing enhancement provision coupled with a substantive offense.

the effective date of § 848(b). Thus, the instruction required the jury to find that the appellants continued to violate § 848 after the penalty for violating that statute was increased. The appellants, unlike the defendants in *Torres,* cannot complain that the jury might have found that they stopped acting as principal administrators after § 848(b) became effective.[5]

 The appellants also claim that venue did not lie in the Southern District of Illinois for the offense of violating § 848. *See* U.S. Const. amend VI; FED.R.CRIM.P. 18. The appellants argue that because none of the predicate acts occurred in the Southern District of Illinois after the effective date of § 848(b), they were convicted in violation of their right to be tried in a district in which their crimes were committed. Because the appellants engaged in a continuing offense, venue may be established by proof that any act in furtherance of the CCE took place in the Southern District of Illinois. *See United States v. Molt,* 772 F.2d 366, 369–70 (7th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986); *United States v. Lewis,* 797 F.2d 358, 366–68 (7th Cir.1986), *cert. denied,* 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1986). At trial the government offered testimony to show that the appellants provided large quantities of marijuana to their dealers in the East St. Louis and Southern Illinois areas. Indeed, the appellants do not contest the adequacy of this evidence on appeal. The evidence was more than adequate to establish venue.

### III.

 Lanier, Kramer and Fischer raise several other objections to their § 848 convictions. They first argue that the district court's instructions erroneously permitted the jury to rely upon the conspiracy charge as one of the continuing series of violations that § 848 requires for conviction. In *United States v. Baker,* 905 F.2d 1100, 1104 (7th Cir.1990), *certs. denied,* —— U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 167, —— U.S. ——, 111 S.Ct. 270, 112 L.Ed.2d 226, —— U.S. ——, 111 S.Ct. 686, 112 L.Ed.2d 677 (1990), we held that a conspiracy may not be included as one of the crimes making up the continuing series necessary for a CCE conviction. We also held, however, that "a series may be established by two or more substantive drug offenses." *Id.* at 1104. *Baker* obligates us to affirm the convictions of the appellants because the indictment alleged that each appellant was involved in more than two substantive drug offenses. The indictment charged Lanier and Kramer with involvement in seven substantive drug offenses, while Fischer was charged with five substantive offenses. These offenses were more than adequate to meet the continuing series requirement of the CCE charge.

 Lanier, Kramer, and Fischer contend that the jury should have been instructed that it must unanimously agree as to each of the two or more predicate offenses constituting the "continuing series" element of the charge. Federal Rule of Criminal Procedure 31 requires, and the district court gave, a general unanimity instruction. *See* Fed.R.Crim.Pro. 31. The appellants principally rely on *United States v. Echeverri,* 854 F.2d 638, 642–43 (3d Cir.1988), which held that, in a § 848 case, the jury should be instructed that it must unanimously agree on the acts which constitute the continuing series of violations. This court has expressly declined to follow *Echeverri.* In *Canino,* at 948, we held that "[t]he constitutional requirement of juror unanimity in federal criminal of-

---

5. The appellants argue in their reply briefs that if § 848(b) was a substantive offense it was plain error for the district court to fail to instruct the jury that it could find the appellants guilty of violating § 848(a). The appellants' theory is that if the jury was required to determine whether the appellants met the requirements for a life sentence under § 848(b), it should have been able to decide that the appellants had violated only § 848(a). At the instruction confer-

ence, the district court asked the appellants whether they wanted the jury to be instructed that it could find the appellants had violated only § 848(a) in addition to the instruction on § 848(b). Kramer and Lanier expressly stated that they did not want a lesser included offense instruction on § 848(a), while Fischer remained silent. Therefore, the appellants have waived this issue.

fenses is satisfied when each juror in a CCE trial is convinced beyond a reasonable doubt that a defendant charged under the CCE statute committed two predicate offenses." *See also United States v. Markowski,* 772 F.2d 358, 364 (7th Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986) (holding that under § 848 the jury was not required "to agree unanimously on the identity of at least five people who acted under [a defendant's] supervision"); *United States v. Bond,* 847 F.2d 1233, 1237 (7th Cir.1988). The general unanimity instruction required the jury to find that the appellants committed at least *three* predicate acts. Thus, the appellants' unanimity argument is unavailing.

■ Lanier, Kramer and Fischer argue that the district court's instructions on the CCE count constructively amended the indictment. The court instructed the jury that it could find that the appellants engaged in a continuing series of violations based upon the various predicate acts set forth in the indictment, *"together with any additional violations of the drug laws"* (emphasis added). The appellants object to the italicized portion of the instruction on the ground that it subjected them to further controlled substance violations beyond those which were charged in the indictment. *See Stirone v. United States,* 361 U.S. 212, 215–18, 80 S.Ct. 270, 272–74, 4 L.Ed.2d 252 (1960). The Supreme Court has long held that every defendant has a " 'substantial right to be tried only on charges presented in an indictment returned by a grand jury.' " *United States v. Miller,* 471 U.S. 130, 140, 105 S.Ct. 1811, 1817, 85 L.Ed.2d 99 (1985) (quoting *Stirone,* 361 U.S. at 217, 80 S.Ct. at 273). A constructive amendment of an indictment occurs when the evidence introduced by the prosecution broadens "the possible bases for conviction from that which appeared in the indictment." *Miller,* 471 U.S. at 138, 105 S.Ct. at 1816. A constructive amendment of the indictment may also occur if the district court's instructions to the jury broaden "the possible bases for conviction." *Id.; United States v. Keller,* 916 F.2d 628, 632–36 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1628, 113

L.Ed.2d 724 (1991). It is well settled that "[a] judicial amendment of the indictment, whether implicit or explicit, is *per se* reversible error." *United States v. Galiffa,* 734 F.2d 306, 311 (7th Cir.1984); *United States v. Kuna,* 760 F.2d 813, 817 (7th Cir.1985).

■ The appellants contend that the trial court's instruction broadened the possible bases for their CCE convictions by including new predicate acts which were not listed in the indictment. They contend that it is possible that the jury found the appellants were principal leaders or administrators of a CCE based on the new predicate acts that were not alleged in the indictment.

We disagree with the appellants' contention that the trial court's instruction broadened "the possible bases for conviction from that which appeared in the indictment," *Miller,* 471 U.S. at 138, 105 S.Ct. at 1816 (1985), because the appellants misinterpret the requirements for a conviction under § 848. Numerous courts, including this one, have allowed proof of overt acts in violation of the drug laws, although those acts were not specified in the indictment, to sustain a § 848 charge. In *United States v. Sperling,* 506 F.2d 1323, 1344 (2d Cir.1974), *certs. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975), the court stated that an indictment charging a violation of § 848 need not "specify each violation constituting the continuing series of violations proscribed by the statute." *See also United States v. Young,* 745 F.2d 733, 747 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985) ("in order to support a § 848 charge, the government is not required to plead in any form, much less obtain convictions on, any of the eligible predicate offenses, but may instead simply prove at trial the continuing series of offenses."); *Baker,* 905 F.2d at 1103 (same); *Markowski,* 772 F.2d at 361–62 (same); *United States v. Alvarez–Moreno,* 874 F.2d 1402, 1408 (11th Cir. 1989), *cert. denied,* 494 U.S. 1032, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990); *United States v. Sterling,* 742 F.2d 521, 526 (9th

Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); *Echeverri,* 854 F.2d at 642 n. 4; *United States v. Becton,* 751 F.2d 250, 256 (8th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).

The appellants contend that *Young, Sperling,* and *Baker* are distinguishable because those cases did not involve an amendment of the indictment. We disagree. If the government was not required to allege any of the possible predicate acts in the indictment, there can be no error where it alleged all but a few of the acts. Moreover, we note that the appellants do not contend that they were in fact unable to defend against the CCE charge because they were not notified of the predicate acts that the government would seek to prove at trial. Thus, we do not agree that the indictment was constructively amended by the court's instruction. *See Canino,* at 944 (holding that there was no amendment of the indictment where the jury was instructed that it could rely on a predicate act not mentioned in the indictment to find a continuing series under § 848(d)).

■ Lanier, Kramer and Fischer argue that punishing marijuana trafficking under § 848(b) with life imprisonment without possibility of parole is cruel and unusual punishment in violation of the eighth amendment. A recent decision by the Supreme Court, *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), has settled this issue definitively. In *Harmelin,* the petitioner was convicted of possessing 672 grams of cocaine and sentenced to a mandatory term of life in prison without possibility of parole. *Id.* at 2684. The Supreme Court rejected the petitioner's argument that the sentence was cruel and unusual within the meaning of the eighth amendment. *Id.* at 2702. The Supreme Court also rejected the petitioner's claims that his sentence was disproportionate to the crime he committed and that the sentence was void because the court was required to impose it and could not consider mitigating factors. The Court stated that: "[w]e have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further." *Id.* Thus, we find meritless the appellants' claim that their mandatory life sentences violate the eighth amendment.

## IV.

Lanier, Kramer, Fischer and Bell argue that the trial court's instructions to the jury after it began its deliberations and indicated that it was deadlocked improperly coerced the jury to return a guilty verdict. The trial lasted fourteen weeks. After being instructed, the jury began its first day of deliberations at 3:00 p.m. and recessed at 10:05 p.m. On the second day of the its deliberations, the jury requested to hear certain portions of the trial testimony. Before the district court could respond to this request, the foreman sent another note stating that though the jury was "still deliberating over the first defendant" it was "at a point of deadlock." The court then read the requested testimony to the jurors. A later note from the jury asked whether "defendants Lanier, Kramer and Fischer [could] be convicted on the original indictment of 848(a) only and not on 848(b)." Before the jury retired, the court instructed that the jurors "must follow the instructions I have previously given with regard to the superseding indictment filed January 26, 1988 only."

On the third day of deliberations, the jury sent a note to the court which stated: "... Regarding defendant Bell, Count 2, we're deadlocked eleven to one. Regarding defendants Lanier and Kramer, Count 1, we are deadlocked eleven to one. Regarding defendant Fisher [sic], Count 1, we have not taken a final vote." A short time later, the jury informed the court that: "... We have taken—taken the final vote on Fisher [sic], Count 1. It is the same as the others, deadlocked, eleven guilty, one not guilty. If you wish further deliberations, we respectfully request that it begin at 9 a.m. tomorrow...." The district court responded to the note by directing that deliberations would resume the next morning.

On the fourth day of deliberations, the jury announced that: "... we are still deadlocked on Count 1 for defendants Lanier, Kramer and Fisher [sic]. Eleven guilty [and] one not guilty. Also, on Defendant Bell, Count 2, eleven guilty and one not guilty.... Any further deliberations would be to no end...."

The appellants then moved for a mistrial. During the court's discussion of the note with counsel, the foreman sent another note requesting that the court give him "two more hours." The district court denied the motions for a mistrial and sent a note to the jury which stated: "Continue your deliberations. Judge Foreman."

In denying the motions for mistrial the district court found that although the jury had been in session over the course of four days, it had spent as little as nine hours over five days actually deliberating. The court noted that the jurors often were required to wait while counsel for the government and the appellants debated the proper responses to the jury's notes.

Soon afterwards, the jury responded with a note which stated: "Your Honor, we are at a deadlock. Nothing has changed. Thank you...." Appellants once again moved for a mistrial. The district court denied the motions and directed the jury to continue its deliberations. The court found that the jury had not deliberated for an adequate time in relation to the length of the trial for the court to grant a mistrial. On the fifth day of deliberations, the jury returned guilty verdicts against the appellants on all counts.

■ The appellants maintain that the trial judge's instruction to the jury to "continue to deliberate" violated the rule of *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir.1973). The relevant inquiry, under *Silvern*, however, is "whether 'the court's communications pressured the jury to surrender their honest opinions for the mere purpose of returning a verdict.' " *United States v. Thibodeaux*, 758 F.2d 199, 203 (7th Cir.1985) (quoting *United States v. Hamann*, 688 F.2d 507, 511 (7th Cir.1982), *cert. denied*, 460 U.S. 1013, 103 S.Ct. 1255, 75 L.Ed.2d 483 (1983)). On several occa-

sions this court has held that instructions to continue to deliberate were neutral and not coercive. In *United States v. D'Antonio*, 801 F.2d 979, 983–84 (7th Cir.1986), we said that an instruction to "continue to deliberate" after the jury had declared that it had reached an impasse is "perfectly content neutral and carrie[s] no plausible potential for coercing the 'jury to surrender their honest opinions for the mere purpose of returning a verdict.' " *Id.* at 984 (quoting *Thibodeaux*, 758 F.2d at 203). Moreover, in *Thibodeaux*, the jury notified the court that it had reached a verdict on three counts but was deadlocked on one count. The court instructed the jury to continue deliberations for the time being, but informed the jurors that it would call them out later. *See id.* This court found that the instruction was "noncommittal" and not coercive. *See United States v. Sblendorio*, 830 F.2d 1382 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988) (upholding an instruction that differed from that of *Silvern* where early in the deliberations one juror stated that he believed the evidence insufficient to convict any defendant on any count).

The appellants claim that this case is different from *D'Antonio* and *Thibodeaux* because the district court knew that there was one holdout juror when it instructed the jury to continue its deliberations. We are unable to see how that makes any difference; the instruction simply did not influence the jurors to find the appellants guilty or not guilty. Indeed, the holdout juror remained free to persuade the other jurors to acquit the appellants. *See United States v. Warren*, 594 F.2d 1046, 1049–50 (5th Cir.1979) (holding that the trial judge did not err when he instructed the jury to continue its deliberations even though he was aware of a divided preliminary vote by the jurors); *United States v. Robinson*, 560 F.2d 507, 516–18 (2d Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). Thus, we conclude that the trial judge's instructions to the jury to "continue your deliberations" were entirely proper and not in error.

The appellants further argue that the district court erred when it twice declined to declare a mistrial after the jury announced that it was "deadlocked." "The decision to grant a mistrial is within the broad discretion of the trial judge and is to be made in view of all the circumstances of the case." *United States v. Allen*, 797 F.2d 1395, 1400 (7th Cir.), *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *D'Antonio*, 801 F.2d at 983. In denying the motions for a mistrial the district court found that the jury had deliberated for a very short time, perhaps as little as nine hours over four days, in comparison to the length of the trial, fourteen weeks, and that it was not hopelessly deadlocked. *See id.* (finding no abuse of discretion where the trial court denied a motion for a mistrial and instructed the jury to continue its deliberations where it reasonably believed that the jury had not devoted adequate time to its deliberations). The district court's determination that the jury was not hopelessly deadlocked after only four days was certainly reasonable given the extensive length of the trial and the multiple defendants involved. There was no abuse of discretion in the district court's refusal to grant a mistrial.

## V.

Fischer argues that the district court erred under Federal Rule of Evidence 403 in admitting testimony by an informant, C.M. Stewart, that Fischer imported 15 tons of marijuana to the United States in 1981. Fischer was not charged with any criminal offense as a result of that activity. The trial court overruled Fischer's objection and concluded that the evidence was admissible to show that Fischer intended to import marijuana on other occasions. Fischer contends that the government improperly introduced the evidence to show that Fischer had a propensity for committing drug offenses. Fisher also argues that the admission of this testimony was especially prejudicial to him because of the danger that the jury would erroneously consider the evidence in the context of the continuing series requirement of § 848.

To determine whether evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) of the Federal Rules of Evidence we follow the three-part analysis set forth in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). *Jackson v. United States*, 886 F.2d 838, 845 (7th Cir.1989); *United States v. Lennartz*, 948 F.2d 363, 365–66 (7th Cir. 1991). First, the district court must determine whether the evidence of other crimes, wrongs, or acts "is probative of a material issue other than character." *Id.* We have found inadmissible evidence used to show a defendant's bad character through a mere propensity to commit other crimes. *Id.*; *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984). Second, the district court must determine "whether the evidence of other crimes, wrongs, or acts is relevant under Rule 402—as enforced through Rule 104(b)." *Jackson*, 886 F.2d at 846; *Huddleston*, 485 U.S. at 691, 108 S.Ct. at 1501–02. The evidence is relevant only if "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501; *Jackson*, 886 F.2d at 846. Relevance, in part, depends on whether the other crime, wrong, or act is similar enough and close enough in time to a matter in issue. *Shackleford*, 738 F.2d at 779.

We noted in *Jackson* that if the evidence of other crimes, wrongs, or acts is "relevant and offered for a proper purpose under 404(b), 'the evidence is subject only to general strictures limiting admissibility such as ... [Rule] 403.'" *Id.* at 846–47 (quoting *Huddleston*, 485 U.S. at 687, 108 S.Ct. at 1500). We held in *Jackson* that the key factor in the Rule 403 balancing test "is plainly that relevant evidence should only be excluded if its probative value is *substantially* outweighed by any of the listed concerns in Rule 403." 886 F.2d at 847; *Shackleford*, 738 F.2d at 779; *United States v. Manganellis*, 864 F.2d 528, 531–32 (7th Cir.1988). "In reviewing the admissibility of relevant, potentially prejudicial evidence, we view the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing the

prejudicial effect." *United States v. Brown*, 688 F.2d 1112, 1117 (7th Cir.1982); *United States v. Connelly*, 874 F.2d 412, 415 (7th Cir.1989).

In reviewing decisions to admit evidence, the district court's "[d]iscretion, when exercised, will rarely be disturbed...." *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir.1987). We will reverse a trial court's admission of evidence under 403 or 404(b) " 'only upon a showing of abuse of discretion.' " *United States v. Chaimson*, 760 F.2d 798, 808 (7th Cir.1985) (quoting *Brown*, 688 F.2d at 1117); *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989); *United States v. Liefer*, 778 F.2d 1236, 1244 (7th Cir.1985). We note finally, that "[o]ur role on review is not to second-guess the results reached by the trial court in applying the *Shackleford* standards." *United States v. Hudson*, 843 F.2d 1062, 1065 (7th Cir.1988).

█ We believe that there was an exercise of principled discretion by the district court. The district court admitted Stewart's testimony concerning Fischer's shrimp boat shipment of marijuana on the ground that it showed that Fischer intended to conspire with the other appellants to distribute more than 1,000 pounds of marijuana. *See Liefer*, 778 F.2d at 1242–43 (the defendant's specific intent to distribute was an essential element of the crime of conspiracy to distribute more than 1,000 pounds of marijuana). This satisfied the first part of the *Huddleston* analysis. Moreover, the district court did not abuse its discretion in concluding that Fischer's 1981 importation of marijuana was similar enough to the activities for which he was on trial—conspiracy to distribute in excess of 1,000 pounds of marijuana—and close enough in time—1981 as opposed to 1983–87—to be relevant evidence. The evidence was more than adequate to show that Fischer directed the importation of the 15 tons of marijuana on the shrimp boat, thus satisfying the second part of the *Huddleston* analysis. *See* 485 U.S. at 689, 108 S.Ct. at 1499. Third, the district court did not abuse its discretion in concluding that the prejudicial effect of Stewart's testimo-

ny, if any, did not substantially outweigh its probative value. The district court did not abuse its discretion in admitting Stewart's testimony concerning Fischer's importation of 15 tons of marijuana in 1981.

█ Bell contends that the district court abused its discretion in denying Bell's motion to admit in evidence certain portions of the proffered testimony of William Palumbo. Bell contends that the government stipulated that Bell could introduce Palumbo's testimony. Palumbo was a front man for the enterprise, who helped reserve dock space in San Francisco and New Orleans. Before trial, Palumbo, a co-defendant of Lanier, Fischer, Kramer and Bell, agreed to give a proffer of his testimony to the government apparently because he wanted to demonstrate to the government that he would be a cooperative witness. Davis, an FBI agent who took the proffer from Palumbo, testified that Palumbo "told me that Kay Bell was unaware of any illegalities." At a pre-trial hearing on whether Palumbo's trial should be severed from that of the other defendants, counsel for the government stated that "I'll stipulate that the statement that was made by Mr. Palumbo ... in Mr. Bell's behalf can be introduced for Mr. Bell." The government made the offer to stipulate because it hoped to prevent the severance of Palumbo's trial from that of the other appellants. Counsel for Bell, who had not previously participated in the discussion, responded: "We will accept that stipulation, Your Honor." The district court stated "okay." The hearing concluded without further discussion of the stipulation. Shortly after the hearing, Palumbo's motion for a separate trial was granted.

During the trial, when Bell moved for the admission of the stipulation, the government opposed the admission of Palumbo's testimony. Although the record is not entirely clear, it appears that the district court concluded that the government had entered into a stipulation with counsel for Bell. The district court, however, noted that the government's offer to stipulate had been made with the assumption that Palumbo was to be tried with the other

defendants. The district court denied Bell's motion to require enforcement of the government's stipulation because Palumbo was no longer a co-defendant.

We agree with the district court that the government did initially stipulate to the admission of the testimony of Palumbo, which was helpful to Bell. Even so we cannot find that the district court abused its discretion when it declined to enforce the stipulation. "As with other matters of trial management, the district court has 'broad discretion' to decide whether to hold a party to its stipulations; the district court's decision will be overturned on appeal only where the court has clearly and unmistakably abused its discretion." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir.1989); *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 690–91 (7th Cir.1985). Here, the government stipulated with the assumption that Palumbo would be tried with the appellants. The circumstances underlying the offer to stipulate were altered when the district court granted the motion to sever Palumbo's trial. The district court acted within its discretion to void the stipulation.

Bell also argues that the trial court abused its discretion in not enforcing the stipulation because the stipulated testimony tended to exculpate him by contradicting proof which tended to show that Bell understood that the other appellants were engaged in a conspiracy to import marijuana. The government points out in response that Palumbo's statement was not subject to cross-examination and that the other evidence of Bell's guilt was substantial. We agree and conclude that the admission of the stipulation, while possibly helpful to Bell, would not have made a difference in the outcome of the trial. Therefore, we conclude that the district court did not abuse its discretion in denying Bell's motion to enforce the stipulation.

## VI.

The other arguments raised by appellants are without merit.

For the foregoing reasons, we AFFIRM the convictions of Lanier, Kramer, Fischer and Bell.

CUDAHY, Circuit Judge, concurring.

I agree that the law of this circuit supports the affirmance of these convictions. I write separately to discuss this circuit's law on an issue touched on only tangentially in the opinion for the panel: the admissibility of other-crimes evidence on the issue of intent when intent is not disputed. Fischer's intent was apparently in issue in this case, so I agree that evidence of his 1981 marijuana-importation activities was admissible. However, since the government has argued that Fischer's intent was "necessarily in issue" because Fischer was charged with a specific-intent crime, Gov't Br. at 110, I think it appropriate to express my concerns regarding this circuit's rule on this matter.

The general rule throughout the circuits has been that in order for evidence of other crimes to be admissible to establish intent under Federal Rule of Evidence 404(b), the issue of intent must be disputed. *See United States v. James*, 555 F.2d 992, 1000 n. 46 (D.C.Cir.1977) (citing cases from the Second, Third, Fourth, Fifth, Sixth, Eighth and D.C. Circuits); *United States v. Fierson*, 419 F.2d 1020, 1023 (7th Cir.1969); Edward W. Cleary, *McCormick on Evidence* § 190, at 564 (3d ed. 1984) ("[I]f the prosecution maintains that the other crime reveals defendant's guilty state of mind, then his intent must be disputed."); 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5242, at 489 (1978) ("The issue of intent must be seriously disputed; for example, if the defendant claims that he is not the person identified as the actor, intent is not an issue and the [Rule 404(b)] exception cannot be invoked.").

This circuit has carved out an exception to the general rule, holding that where the crime includes specific intent as an element, other-crimes evidence is admissible even though intent is not in dispute (or, put another way, intent is "automatically in issue."). *United States v. Monzon*, 869

F.2d 338, 344 (7th Cir.), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); *United States v. Liefer,* 778 F.2d 1236, 1242–43 (7th Cir.1985). The line of cases applying this exception extends back to *United States v. Weidman,* 572 F.2d 1199, 1202 (7th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Other circuits generally have declined to follow suit with such an exception.[1] Most courts make no distinction between specific-intent and general-intent crimes, but simply apply the general rule that intent must be in issue for other-crimes evidence to be admitted.[2] As the Fifth Circuit has written: "If the defendant's intent is not contested, then the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice; therefore, in this circumstance the evidence is *uniformly excluded.*" *United States v. Beechum,* 582 F.2d 898, 914 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) (emphasis added; footnote omitted); *see also United States v. Figueroa,* 618 F.2d 934, 940 (2d Cir.1980).

In questioning the defensibility of this circuit's rule, I wrote in *United States v. Chaimson,* 760 F.2d 798, 813 (7th Cir.1985):

[T]he rule should not be so understood as to make the admissibility of other-crimes evidence automatic where the crime is one of specific intent. Even if we adopt the fiction that intent is always in question in such cases, such evidence is only admissible if it is really introduced to show *intent.* The government ... cannot simply flood the courtroom with other-crimes evidence on the grounds that the crime was one of specific intent.

I am afraid that over the years this circuit's bright-line exception has resulted in a great deal of prejudicial extrinsic evidence finding its way into many criminal trials. In my view, intent ought to be an issue *in dispute* in order for evidence of other crimes to be admissible for the purpose of establishing intent; when intent is not contested, evidence of other crimes is likely to be used simply for the prohibited purpose of showing criminal propensity. But the mere fact that a crime includes specific intent as an element does not make the issue of intent disputed. Rather, our specific-intent exception has effectively swallowed the rule providing that, as evidence of intent, other crimes are not admissible unless intent is disputed or called into question. I believe that we should return to that fundamental rule.

---

**1.** Some cases in the Eighth Circuit have also held that intent need not be disputed by the defendant in specific-intent-crime cases in order for other-crimes evidence to be admissible. *See United States v. Engleman,* 648 F.2d 473, 478 (8th Cir.1981); *United States v. Adcock,* 558 F.2d 397, 402 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

**2.** The Fifth Circuit has expressly rejected a distinction between specific-intent and general-intent crimes as "unhelpful in analyzing when such evidence properly bears on intent." *United States v. Adderly,* 529 F.2d 1178, 1180 (5th Cir. 1976).

Some courts have held that the defendant bears the burden of affirmatively removing the issue of intent from the case, generally by stipulation or concession. *See, e.g., United States v. Manner,* 887 F.2d 317, 322 & n. 2 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *United States v. Russo,* 717 F.2d 545, 552 (11th Cir.1983). In contrast to the approach of these cases, the specific-intent exception of this circuit automatically precludes defendants charged with specific-intent crimes from *ever* removing intent as an issue in the case, even by stipulation.