**Tommy Lee RUTLEDGE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 97–4054.**

United States District Court, C.D. Illinois.

Sept. 25, 1998.

Harold M. Jennings, Jennings Novick, Bloomington, IL, for petitioner.

Thomas A. Keith, Assistant United States Attorney, Peoria, IL, for respondent.

## ORDER

MIHM, Chief Judge.

This matter is before the Court on Petitioner, Tommy Lee Rutledge's ("Rutledge"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255[# 1], Petitioner's Motion for Production of Telephone Recording [# 14], Petitioner's Motion for Evidentiary Hearing [# 15], Petitioner's Motion to Produce Statements by Michael Wright [# 21], Petitioner's Motion to Produce Statements by Kim Mummert [# 22], and Respondent's Motion for Reconsideration of the Court's June 18, 1998 Prospective Ruling [# 38].

Rutledge's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255[# 1] is GRANTED IN PART and DENIED IN PART. The Clerk is directed to prepare a new Sentencing Order which reflects the determinations made within this Order. Petitioner's Motion for Production of Telephone Recording [# 14] is DENIED. Petitioner's Motion for Evidentiary Hearing [# 15] is DENIED. Petitioner's Motion to Produce Statements by Michael Wright [# 21] is DENIED. Petitioner's Motion to Produce Statements by Kim Mummert [# 22] is DENIED. Respondent's Motion for Reconsideration of Court's June 18, 1998 prospective ruling [# 38] is DENIED. The Court will hold a telephone status call with counsel within 14 days to determine whether the United States wishes to pursue the retrial of Count V.

### Background

A jury convicted Tommy Lee Rutledge, Shelly Henson, Richard Hagemaster, and Stan Winters of conspiring to distribute cocaine in violation of 21 U.S.C. § 846. Additionally, the jury convicted Rutledge of conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848, distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a felon in violation of 18 U.S.C. § 922(g), and two counts of using or carrying a firearm during the commission of a drug felony in violation of 18 U.S.C. § 924(c).

Rutledge was sentenced to life imprisonment on the continuing criminal enterprise

count (Count I), life imprisonment without the possibility of release on the conspiracy to distribute narcotics count (Count II), and life imprisonment without the possibility of release on the distribution count (Count III). Rutledge also received a 10–year term of imprisonment on the possession of a firearm by a felon count (Count IV). The three life terms and the 10–year term were ordered to run concurrently. Rutledge was also sentenced to a 5–year term of imprisonment on one armed drug trafficker count (Count V) and a 10–year term of imprisonment on the other (Count VI). These convictions were consecutive to each other and the other sentences.

Rutledge appealed his conviction to the Seventh Circuit, which affirmed his conviction. *United States v. Rutledge*, 40 F.3d 879 (7th Cir.1994). Subsequently, the Supreme Court reversed the Seventh Circuit's decision and remanded the case for a vacation of *either* Count I(CCE) or Count II (conspiracy to distribute narcotics), holding that conspiracy to distribute controlled substances is a lesser included offense of the continuing criminal enterprise offense. *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). This Court vacated Count II on May 29, 1996.

Rutledge filed a motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct an Illegal Sentence on April 24, 1997. On November 12, 1997, this Court appointed counsel to represent him. On March 26, Rutledge filed a supplemental memorandum of facts and law supporting his previously filed § 2255 motion. The issues which require resolution are:

1. Whether Counts V and VI (both armed drug trafficker counts) must be vacated in light of the evidence, jury instructions and the Supreme Court's decision in *United States v. Bailey?*

2. Whether the Count I(CCE) conviction must be set aside because the jury could have relied on impermissible predicate offenses?

3. If Count I(CCE) is vacated, can Count II (conspiracy) be revived?

4. Whether Count IV (felon in possession of firearm) must be vacated because of the restoration of certain civil rights?

5. Whether Count III (distribution of controlled substance) must be vacated due to his trial counsel's failure to conduct an adequate investigation of the facts, interview potential witnesses and present an alibi defense?

6. Whether the sentence imposed on Count III must be reduced to no more than 30 years because the sentence exceeds the maximum sentence proscribed by 21 U.S.C. § 841(b)(1)(C)?

7. Whether Rutledge was denied effective assistance of counsel as guaranteed by the Sixth Amendment?

Rutledge has also filed motions seeking the production of telephone recordings which were made from his place of incarceration [# 14], for an evidentiary hearing [# 15], and to produce statements by Michael Wright [# 21] and Kim Mummert [# 22]. As will be discussed below, this Court finds that the issues presented in the § 2255 motion are purely legal and that there is no need for additional evidence. Accordingly, these Motions are denied.

### *Standard of Review*

Relief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir.1994) (internal citations and quotations omitted). A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir.1995). A petitioner is barred from raising in a § 2255 proceeding constitutional issues that could have been raised earlier unless he or she can show good cause and prejudice. *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988). Non-constitutional errors that could have been raised on appeal are barred in a § 2255 proceeding, regardless of cause and prejudice. Therefore, a petitioner may not raise three types of issues: (1) issues that he or his attorneys raised on direct appeal, absent a showing of

changed circumstances; (2) non-constitutional issues that could have been, but were not, raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, unless petitioner can show both good cause for, and prejudice from, the procedural default. *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996).

### 1. Counts V and VI (Armed Drug Trafficker) and the *Bailey* Rule

■ Rutledge argues that his convictions on Counts V and VI (both armed drug trafficker counts pursuant to 18 U.S.C. § 924(c)) must be vacated because of the rule announced in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

Section 924(c)(1) requires the imposition of specified penalties if the defendant "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." At trial, this Court instructed the jury:

> To sustain the charge of using or carrying a firearm during a drug trafficking crime as alleged in Counts 5 and 6 of the indictment the Government must prove each of the following propositions beyond a reasonable doubt. First, that the defendant Tommy Lee Rutledge did knowingly use or carry a firearm. Second, that the firearm was used or carried during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States.... In reference to Counts 5 and 6, use of a firearm does not require that the weapon be found on or near the defendant. A firearm is, quote, used, unquote, under federal law if its presence increased the likelihood of success of a drug offense as a means of protection or intimidation.

Jury Instruction No. 18.

While the instruction given by this Court was an accurate statement of the law at the time of Rutledge's trial, before his appeal was exhausted, the Supreme Court decided *Bailey,* which changed the landscape of the "use" prong of 924(c)(1).

In *Bailey,* the Supreme Court held "that 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey,* 116 S.Ct. at 505. The Supreme Court stated that active employment "certainly includes brandishing, displaying, *bartering,* striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* (emphasis supplied). By contrast, the mere placement of a firearm for protection at or near the site of a drug crime or its proceeds or paraphernalia, or nearby concealment of a gun to be at the ready for an imminent confrontation are no longer within the scope of § 924(c)'s definition of "use." *Id.* at 508. The Court made it clear that the Government was required to show more than the "inert presence" or "storage" of a firearm in order to establish the "use" prong.

■ It is the law of this Circuit that an erroneous jury instruction is harmless if, looking at the instructions and the record as a whole, the Court can be convinced that a properly instructed jury would have reached the same verdict. *United States v. Williams,* 33 F.3d 876, 879 (7th Cir.1994). Rutledge, however, correctly argues that the general phrasing of the jury instruction at his trial makes it impossible to tell whether the jury convicted under the "use" or "carry" prong, and he is consequently entitled to the presumption that the jury's conviction rested solely on the "use" prong.

The Seventh Circuit was faced with this problem of applying *Bailey* retroactively in *United States v. Jackson,* 103 F.3d 561 (7th Cir.1996). There, a three-tier standard was established for determining what relief is appropriate.

> In cases ... where the jury instruction on "use" was clearly flawed, whether a § 924(c)(10) conviction will be affirmed out right, reversed outright, or reversed and remanded depends on the nature of the evidence presented at trial. The essential framework is as follows: 1) if all the firearms evidence presented qualifies as either active-employment "use" or "carry" we will affirm the conviction despite the bad instruction, *see, e.g., United States v. Baker,* 78 F.3d 1241, 1245–1247 (7th Cir.1996); 2) if none of the evidence presented qualifies

as either active-employment "use" or "carry," we will reverse the convictions outright, *see, e.g., United States v. Monroe,* 73 F.3d 129, 132–33 (7th Cir.1995); and 3) if some of the evidence presented could qualify as either active-employment "use" or "carry" but other firearms evidence presented exemplifies only possession of some other type of now-defunct, inactive "use," we will reverse the conviction and remand for new trial, since we cannot be sure whether the jury convicted on the proper basis or the improper basis, *see, e.g., United States v. Thomas,* 86 F.3d 647, 650–51 (7th Cir.1996).

*Jackson,* 103 F.3d at 569.

The Government concedes that Count VI should be reversed. However, the parties dispute what should be done with Count V (Rutledge seeks outright vacation; the Government wants a new trial). The Government argues that there was some evidence of active "use" produced which would allow a retrial of Count V. The Government relies on evidence that Rutledge traded drugs for a guns on multiple occasions. *Bailey* specifically contemplates that "bartering" is an activity which would constitute "use." As there was testimony presented at trial that Rutledge bartered drugs for guns, this Court finds that Count V can be retried, as some of the evidence admitted at trial would support a conviction in the post-*Bailey* environment.

### 2. Count I(CCE) and Impermissible Predicate Acts

■ The CCE statute, 21 U.S.C. § 848, requires proof of five elements: (1) a violation of the federal narcotics laws; (2) which crime is part of a series of violations of the federal narcotics laws; (3) undertaken by the defendant and at least five other individuals; (4) with respect to whom the defendant holds a supervisory, managerial, or organizational role; and (5) from which the defendant receives substantial income or resources. *United States v. Moya–Gomez,* 860 F.2d 706, 745 (7th Cir.1988).

■ Count I(CCE) of the indictment describes predicate acts as "including but not limited to the acts set forth hereinafter in Counts 3, 4, and 5 which Counts are incorpo-

rated by reference as if fully set forth here." From the discussion above, Count V needs to be retried. Count IV (felon in possession of firearm) is not a narcotics crime. Under the CCE statute the Government must prove a continuing series of violations of the *federal narcotics laws.* 21 U.S.C. § 848(b)(2). Rutledge argues that it is well settled that when a court has no way of knowing which alternative ground the jury utilized to determine guilt, and when one or more of those alternative grounds are legally impermissible, the court must reverse the conviction. *Griffin v. U.S.,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). Accordingly, Petitioner's position is that since at least two of the predicate grounds mentioned in the indictment are impermissible, the CCE conviction is infirm. This Court agrees.

The Government points out that the jury instruction on the elements required to sustain a charge of CCE was proper. The jury instruction stated:

[T]he Government must prove each of the following propositions beyond a reasonable doubt.

First: That the defendant Tommy Lee Rutledge violated a federal drug felony law; and

Second: That the conduct took place as part—that the conduct took place as a part of a continuing series of violations; and

Third: That the defendant undertook this activity in concert with five or more persons; and

Fourth: That the defendant acted as the organizer, supervisor or other positions of management of those five persons; and

Fifth: That the defendant obtained substantial income or resources from the criminal enterprise.

\*    \*    \*    \*    \*    \*

A continuing series of drug violations under the continuing criminal enterprise statute means at least two felony violations of federal drug laws not including a conspiracy charge. The defendant need not be convicted of the two felony violations. Furthermore, the felony violations do not have to be alleged in the indictment. You

must agree that there were at least two felony violations but you do not have to agree on which two were committed.

Jury Instruction Nos. 12–14.

The Government points out that the Seventh Circuit has upheld a CCE conviction where the trial court gave a general instruction regarding the predicate acts element of a CCE offense. *United States v. Kramer*, 955 F.2d 479, 486 (7th Cir.), *cert. denied*, 506 U.S. 998, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). In *Kramer*, a jury instruction was held permissible which indicated that the defendant must have "engaged in a continuing series of violations based upon the various predicate acts set forth in the indictment, *together with any additional violations of the drug laws*." *Id.* at 487 (emphasis included in the original jury instruction).

The circumstances of the present case are different. In *Kramer* the court succinctly stated, "[i]f the government was not required to allege any of the possible predicate acts in the indictment, there can be no error where it has alleged all but a few of the acts." *Id.* at 488. In the case at hand, the jury was given a copy of the indictment which referred to Counts 3, 4, and 5 as being predicate acts. While the instruction in *Kramer* is perhaps not model, there the indictment did not go so far as to suggest acts which absolutely *cannot* be used as predicates.

At oral arguments on the instant Petition, the Government argued that the jury instruction given at Rutledge's trial was sufficient to expunge any taint which may have resulted from the inclusion of the impermissible grounds in the indictment. While it is well recognized that a jury is presumed to follow the instructions of a court, this Court cannot conclude that a technically correct refrain in a jury instruction can purge the tainted chorus of the indictment when the jury has been invited to consider impermissible predicate acts and has been presented with evidence of such.

On June 26, 1998 after oral argument on the instant § 2255 Motion, the Government filed a "Motion to Reconsider" the Court's prospective ruling and provided an additional argument on the CCE/predicate act issue. The Government argues:

Even though [this Court might] set aside Count 5 because of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), in order for the jury to have convicted the defendant of the Count 5 charge it had to find that the defendant used or carried a firearm "during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, *that is the distribution of cocaine* ...." (Count 5 of the Indictment, [emphasis in Government's memorandum but not in Indictment]). Therefore, to find the defendant guilty of Count 5, the jury had to find that the defendant committed a federal drug offense of distributing cocaine in connection with or in proximity to a firearm.

Government's Motion to Reconsider, filed June 26, 1998, at 2.

This, however, does not save the day for the Government. When the Court instructed the jury on the elements required to convict on Count V, it did not instruct the jury that the drug trafficking crime must be a felony. The Court instructed the jury, "that the firearm was used or carried during and in relation to a *drug trafficking crime for which he may be prosecuted in a court of the United States.*" (Transcript of Jury Instructions at 18) (emphasis added). This Court finds this instruction was insufficient, because it simply does not inform the jury that the predicate offense needs to be a felony. Some drug trafficking crimes which may be prosecuted in a federal court are not felonies. (*See* 21 U.S.C. § 844, making possession for a small amount of controlled substances punishable by imprisonment of one year or less). For the above reasons, the CCE conviction was improper and is accordingly vacated.

### 3. Reinstatement of Conspiracy Count

As the CCE conviction is invalid, the question becomes whether the conspiracy count can be reinstated. In short, this Court finds that there is good authority for so doing and accordingly orders the reinstatement of the conspiracy count.

In *United States v. Silvers,* 888 F.Supp. 1289 (D.Md.1995), a district court examined this very question. An extensive excerpt of this well reasoned opinion follows:

> The issue which the court now faces is whether defendant's lesser included conspiracy conviction may be reinstated now that the greater offense, CCE, no longer exists. This question appears to be a matter of first impression in this Circuit.
>
> As far as the court is aware, the only Circuit that has been squarely confronted with this issue is the Sixth. In *United States v. Ward,* 37 F.3d 243, 250 (6th Cir. 1994), the defendant was convicted of both conspiracy and CCE. Following the jury's verdict, the district court vacated the conspiracy conviction as a lesser included offense of CCE. The Sixth Circuit found that the evidence was insufficient for the jury to conclude that Ward had managed, supervised or organized five or more people. *Id.* at 250. The Sixth Circuit, however, did not find any error with respect to his conspiracy conviction. Accordingly, upon vacating Ward's conviction for CCE, the Sixth Circuit, without any discussion, "reinstated" his conspiracy conviction. *Id.* at 250.
>
> In addition to the Sixth Circuit's decision in *Ward,* it has been recognized by the Supreme Court, in another context, that a vacated conviction may lawfully be reinstated. In *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Supreme Court held that a conviction may be reimposed where the trial court erroneously grants a judgment of acquittal notwithstanding the jury's verdict of guilty. In so holding, the Supreme Court recognized that reinstatement of a conviction does not implicate the Double Jeopardy Clause of the Fifth Amendment since it does not result in either a second prosecution or multiple punishments. *Id.* at 345, 95 S.Ct. at 1022. *See also United States v. Jones,* 763 F.2d 518, 525 (2d Cir.), ("The reinstatement of [the jury's] ... verdict does not violate Jones' double jeopardy rights since he will not be subjected to a second trial for the same offense. When a guilty verdict is reinstated, double jeopardy is not implicated."), *cert. denied,* 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); *Govt. of the Virgin Islands v. Josiah,* 641 F.2d 1103, 1108 (3d Cir.1981) ("The Double Jeopardy Clause is not offended when the government appeals a post-verdict judgment of acquittal if reversal on appeal would merely reinstate the jury verdict.... This is so because the defendant 'will not twice be tried and thus will not twice be put in jeopardy for the same offense.'") (*quoting United States v. Schoenhut,* 576 F.2d 1010, 1018 n. 7 (3d Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978)).
>
> While *Wilson* and the cases following it plainly involve a factual scenario distinct from the case at bar, the court nevertheless believes that the Supreme Court's holding, and the reasoning underlying it, are fully applicable here. If an appellate court may properly reinstate a conviction on direct appeal, there is no reason why a district court should not be able to do likewise on collateral review.[FN44] *See United States v. Maddox,* 944 F.2d 1223, 1233 (6th Cir.) ("Thus there is no question that we could reverse and order that the conviction be reinstated. It follows *a fortiori* that it would not violate double jeopardy principles for the district court to make the same determination after a timely motion for reconsideration."), *cert. denied,* 502 U.S. 950, 112 S.Ct. 400, 116 L.Ed.2d 349 (1991); *North Carolina v. Pearce,* 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969) ("That a defendant's conviction is overturned on collateral rather than direct attack is irrelevant for these purposes [of double jeopardy] ..."); *Hardwick v. Doolittle,* 558 F.2d 292, 297 (5th Cir.1977) ("When a conviction is overturned on direct appeal *or on collateral attack,* the double jeopardy clause does not bar retrial....") (emphasis added), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).
>
> 44. This is especially true where, as here, defendant has effectively raised this issue for the first time by bringing a successful challenge to his CCE conviction. In this regard, defendant can have no legitimate expectation of finality with respect to the

court's vacation of his conspiracy conviction when he has challenged the greater offense upon which that vacation was solely based. *Cf., United States v. Shue,* 825 F.2d 1111, 1115 (7th Cir.1987) ("Where the defendant challenges one of several interdependent sentences (or underlying convictions) he has, in effect, challenged the entire sentencing plan ... [and] he can have no legitimate expectation of finality in any discrete portion of the sentencing package after a partially successful appeal.").

That a vacated conviction may legitimately be reinstated has also been recognized by several Circuits in another context as well. In *United States v. Hooper,* 432 F.2d 604 (D.C.Cir.1970), the appellant challenged two bank robbery convictions for which he had been given concurrent sentences. Finding no error warranting reversals of one of the convictions, the D.C. Circuit elected, in the interest of judicial economy, to simply vacate the other conviction, rather than engaging in a lengthy and needless analysis of the legal challenge raised by appellant with respect to that conviction. In so holding, the court noted:

> The vacation of the judgment does not destroy the jury verdict, but is rather equivalent in practical effect to a suspension of the imposition of sentence. If it later develops that the interest of justice so requires, the sentence can be reimposed on a concurrent basis. The conviction could then be subject to appellate review. 432 F.2d at 606 n. 8.

The D.C. Circuit has continued to follow the approach set forth in *Hooper. See United States v. Wood,* 879 F.2d 927, 938 (D.C.Cir.1989). The Fifth and Eleventh Circuits have adopted this doctrine as well, and in so doing, have explicitly recognized that a vacated conviction may be reimposed in the interests of justice. *See United States v. Cardona,* 650 F.2d 54, 58 (5th Cir.1981) ("We deem the *Hooper* approach to be appropriate in this case. Accordingly, we vacate the convictions of [the appellants] on count III. If the government subsequently determines that the interests of justice require reimposition of the sentences, then it may interpose its objections and these vacated convictions would then

be open to appellate review."); *United States v. Butera,* 677 F.2d 1376, 1386 (11th Cir.1982) ("The [*Hooper*] procedure is appropriate here.... [I]f the government subsequently determines that the interests of justice require reimposition of the sentence, it may renew its response to Denoma's challenge and the conviction in count one would be open to full appellate review."), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). [Footnote omitted].

\* \* \* \* \* \*

Having considered the above authorities, the court is of the view that defendant's conviction may be reimposed. As the Fourth Circuit has recognized, vacating a lesser included offense is "nothing more than a technicality" that is done purely for the defendant's benefit so as to insure that he is not punished, either directly or collaterally, for both the lesser and greater offense. *United States v. Reavis,* 48 F.3d 763, 773 (4th Cir.1995). The vacation of the defendant's conviction was not a rejection of the jury's verdict, but rather was equivalent in practical effect to a "suspension of the imposition of sentence." *United States v. Hooper,* 432 F.2d at 606 n. 4. Now that defendant's CCE conviction has been reversed, there is no justification for defendant to escape punishment for his major role in a far-reaching conspiracy for which he was properly convicted. To hold otherwise, would indeed be to exalt form over substance. Accordingly, defendant's conspiracy conviction will be reinstated and a hearing held for sentencing on that conviction. [Footnote omitted].

*Silvers,* 888 F.Supp. at 1306–09.

This Court finds *Silvers* to be very persuasive in light of the fact that it is cited favorably in the opinion resulting from Rutledge's appeal to the Supreme Court, *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). The *Rutledge* court noted:

> Finally, the Government argues that Congress must have intended to allow multiple convictions because doing so would provide a "back up" conviction, preventing a defen-

dant who later successfully challenges his greater offense from escaping punishment altogether—even if the basis for the reversal does not affect his conviction under the lesser. Brief for United States 20–22. We find the argument unpersuasive, for there is no reason why this pair of greater and lesser offenses should present any novel problem beyond that posed by any other greater and lesser included offenses, for which the courts have already developed rules to avoid the perceived danger.

In *Tinder v. United States*, 345 U.S. 565, 570, 73 S.Ct. 911, 913, 97 L.Ed. 1250 (1953), the defendant had been convicted of theft from a mailbox and improperly sentenced to prison for more than one year even though the evidence only supported a misdemeanor conviction. Exercising our "power to do justice as the case requires" pursuant to 28 U.S.C. § 2106, we ordered the District Court to correct the sentence without vacating the underlying conviction. Relying on *Tinder* and the practice in "state courts, including courts governed by statutes virtually the same as Section 2106," the Court of Appeals for the District of Columbia Circuit later decided that its "power to modify erroneous judgments authorizes reduction to a lesser included offense where the evidence is insufficient to support an element of the [greater] offense stated in the verdict." *Austin v. United States*, 382 F.2d 129, 141–143 (1967). [Footnote omitted].

Consistent with the views expressed by the D.C. Circuit, federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense. See 8A J. Moore, Federal Practice ¶ 31.03[5], and n. 54 (2d ed.1995); *United States v. Ward*, 37 F.3d 243, 251 (C.A.6 1994) (after finding insufficient evidence to support CCE count, Court of Appeals vacated CCE conviction and sentence and remanded for entry of conspiracy conviction, which District Court had previously vacated as lesser included offense of CCE), *cert. denied*, 514 U.S. 1030, 115 S.Ct. 1388, 131 L.Ed.2d 240 (1995); *United States v.*

*Silvers*, 888 F.Supp. 1289, 1306–1309 (D.Md.1995) (reinstating conspiracy conviction previously vacated after granting motion for new trial on CCE conviction). This Court has noted the use of such a practice with approval. *Morris v. Mathews*, 475 U.S. 237, 246–247, 106 S.Ct. 1032, 1037–1038, 89 L.Ed.2d 187 (1986) (approving process of reducing erroneous greater offense to lesser included offense as long as the defendant is not able to demonstrate that "but for the improper inclusion of the [erroneous] charge, the result of the proceeding probably would have been different"). *See also Jones v. Thomas*, 491 U.S. 376, 384–385, n. 3, 109 S.Ct. 2522, 2527–2528, n. 3, 105 L.Ed.2d 322 (1989) (citing *Morris*).

There is no need for us now to consider the precise limits on the appellate courts' power to substitute a conviction on a lesser offense for an erroneous conviction of a greater offense. [Footnote omitted]. We need only note that the concern motivating the Government in asking us to endorse either the Seventh Circuit's practice of entering concurrent sentences on CCE and conspiracy counts, or the Second Circuit's practice of entering concurrent judgments, is no different from the problem that arises whenever a defendant is tried for greater and lesser offenses in the same proceeding. In such instances, neither legislatures nor courts have found it necessary to impose multiple convictions, and we see no reason why Congress, faced with the same problem, would consider it necessary to deviate from the traditional rule. [Footnote omitted].

*Rutledge*, 116 S.Ct. at 1249–50.

Rutledge's sole argument is that the conspiracy count cannot be reinstated because his sentence was greater on that count than the sentence imposed for the CCE count. For the conspiracy count he was sentenced to life *without parole*, and for the CCE count he was sentenced to life. While at present this is a somewhat academic distinction given that federal parole no longer exists, Rutledge argues, and cites case law for the proposition, that as a matter of law a life sentence is less than a sentence of life without parole. Rut-

ledge points out that someday parole may be a possibility and that he is therefore prejudiced by such a reinstatement.

This Court finds Rutledge's argument flawed. While true that the reinstatement of his conspiracy conviction will result in a sentence of life without parole rather than merely life, this distinction is irrelevant for several reasons. First, as explained above, on remand from the Supreme Court, this Court was given the option of vacating *either* the CCE count or the conspiracy count. As a jury reached a guilty verdict on the conspiracy count, it would be manifestly unfair not to effectuate this verdict only because this Court chose to vacate the conspiracy conviction instead of what turns out today to be a impermissible conviction. Second, Rutledge's concern that he will be prejudiced by the reinstatement of a conviction of life without parole is untenable. This Court cannot agree with Rutledge that a reinstatement of his conspiracy conviction upsets his expectation in the sentence when it is he who is attacking the CCE conviction which was preserved only because the conspiracy conviction was vacated.[1] The Seventh Circuit has held that a defendant who challenges of one of several interdependent sentences has no legitimate expectation of finality in any discrete portion of the sentencing package. *United States v. Shue*, 825 F.2d 1111, 1115 (7th Cir.1987). Accordingly, in light of the case law, this Court hereby reinstates Rutledge's conspiracy conviction.

### 4. Restoration of Civil Rights

■ Rutledge was convicted of Count IV (felon in possession of a firearm) in violation of 18 U.S.C. § 922(g)(1). He now argues that this count must be vacated since his civil rights were restored and that his trial counsel was ineffective because he failed to have the count dismissed. The predicate conviction was a 1984 conviction from Fulton County, Illinois Circuit Court. In a letter dated November 12, 1987, the Illinois Department of Corrections informed Rutledge that he owed no further obligation to that depart-

ment. Moreover, attached to the letter was a memorandum which states in relevant part:

> We are pleased to inform you of the restoration of your right to vote and to hold offices created under the Constitution of the State of Illinois. You also have the right to restoration of licenses granted to you under the authority of the State of Illinois if such license was revoked solely as a result of your conviction, unless the licensing authority determines that such restoration would not be in the public interest.

Exhibit 2 to original petition.

Rutledge argues that this letter purges the conviction so that it may not be utilized to invoke § 922(g). Specifically, Rutledge seeks shelter under 18 U.S.C. § 921(a)(20), which provides in part:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

■ This Court is of the opinion that Rutledge procedurally defaulted this issue. Rutledge did not raise this issue on direct appeal. Before this Court can reach the merits of this issue, Rutledge must demonstrate "cause" and "actual prejudice" for his failure to raise the ineffective assistance of trial counsel issue in his direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992). Rutledge has indicated that he communicated to his trial attorney that his civil rights had been restored by the State of Illinois. Since Rutledge's trial counsel was different than his appellate counsel, he cannot establish a "cause" for the procedural default. Nowhere does Petitioner allege con-

---

1. At oral argument Rutledge moved to be able to file another § 2255 petition attacking the conspiracy count if it were reinstated. The Court agrees that it is appropriate. Rutledge has 90 days from this Order to file such petition. Rutledge is cautioned, however, that the Petition is only to address matters which affect the legality of the conspiracy count.

stitutionally ineffectiveness on appeal with respect to Count IV. In other words, Rutledge cannot claim that his appellate counsel could not have known of this issue at the time of his direct appeal, nor has he claimed that his appellate counsel was ineffective with respect to this issue.

Even if Rutledge had shown cause and prejudice, his claim is without merit. Rutledge places much reliance on *United States v. Glaser*, 14 F.3d 1213 (7th Cir.1994). In *Glaser*, the defendant, following a term of incarceration, was sent a letter stating:

> This is to certify that Richard Raymond Glaser, who was on the 20th day of May 1983, sentenced to the Commissioner of Corrections by the District Court of Washington; Washington County, has completed such sentence and is hereby discharged this 17th day of June, 1986; and that pursuant to Minnesota Statutes, Section 609.165 the said Richard Raymond Glaser is hereby restored to all civil right and to full citizenship, with full right to vote and hold public office, the same as if such conviction had not taken place.
> *NOTE: Be advised that this certificate does not relieve you of disabilities imposed by the Federal Gun Control Act.

*Id.* at 1215.

The Seventh Circuit agreed with the defendant that this letter was sufficiently broad that it invoked the shelter principle of § 921(a)(20). The Court stated:

> The notice rule is designed not for statutes . . . that return the right to vote and cut hair but for communications that seem to have broader import. If, for example, the governor issues a pardon that by virtue of state law, does not restore the right to carry guns, then unless the state tells the felon this the federal government will not treat him as convicted. The second sentence of § 921(a)(20) is an anti-mouse-trapping rule. If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in a corner of the state's penal code cannot be the basis for federal prosecution. A state must tell the felon point blank that weapons are not kosher. The final sentence of § 921(a)(20)

cannot logically mean that the state may dole out an apparently-unconditional restoration of rights yet be silent so long as a musty statute withholds the right to carry guns. Then the state never would need to say a peep about guns; the statute would self destruct. It must mean, therefore, that the state sometimes must tell the felon that under state law he is not entitled to carry guns, else § 922(g) does not apply.

*Id., quoting United States v. Erwin*, 902 F.2d 510, 512 (7th Cir.1990) (emphasis in original).

The *Glaser* court concluded that where a letter gave back *all* rights, a felon must be *expressly* warned that involvement with guns may cause his former conviction to be used as a predicate for a future conviction. Moreover, the *Glaser* court was careful to point out that the final sentence of § 921(a)(20) instructs courts to look, not at the contents of the state statute books, but at the contents of the document. *Id.* at 1218.

In the case at hand, the letter Rutledge received differs in a crucial respect from the letter Glaser received. Quite simply, the letter does not restore *all* of Rutledge's civil rights. The letter merely addresses the restoration of his right to vote, hold offices and have licenses restored. This restoration, unlike the sweeping language used in the letter Glaser received, only represents a few of the civil rights which are guaranteed to citizens. For example, the letter does not attempt to restore Rutledge's right to sit on a jury. Thus, Rutledge cannot reasonably assert that he thought *all* his rights were restored by the letter.

This conclusion is further bolstered by the Seventh Circuit's decision of *Roehl v. United States*, 977 F.2d 375 (7th Cir.1992), which, compared to *Glaser*, is clearly more factually apposite to the case *sub judica*. There, a § 2255 petitioner produced a sample (the original having been destroyed) of the "discharge" letter that was issued to him. The letter stated, "[a]ny civil rights lost as result of conviction herein described, are restored by virtue of the discharge, under the provisions of section 57.078 of the Statutes of the State of Wisconsin." *Roehl*, 977 F.2d at 378.

Roehl, like Rutledge, argued that his discharge fulfilled the dictum in *Erwin* which stated, "[i]f the state sends the felon a piece of paper implying that he is no longer 'convicted' and that *all* civil rights have been restored," § 921(a)(20) prevents counting the conviction unless the paper expressly provides that the person may not ship, transport, possess, or receive firearms. *Id.* The Court rejected Roehl's theory and held:

> *Erwin* aside, we think it arguable, at least, that the restoration of civil rights intended under 18 U.S.C. § 921(a)20 must be an individualized decision, as the expungement, setting aside, or pardon, also enumerated would be. *Noscitur a sociis.*
>
> In any event, the ... "Discharge" form was routinely issued upon satisfaction of sentence. It referred to Wis.Stat. § 57.078 which, although using general language, has been construed to deal primarily with the right to vote and not to restore the right to hold office. Applying the *Erwin* language, we find no reasonable implication that one who receives such a "Discharge" will be treated as if no longer convicted, even if the language "any civil rights lost as a result" of the conviction can be construed to mean "all civil rights."

*Id.*

In the case at hand, the letter Rutledge received was less expansive than the one Roehl received. Roehl was given back all civil rights lost as a result of his conviction. On the contrary, Rutledge's restoration of rights was limited. Thus, Roehl, in fact, had a better argument than Rutledge does, and the Seventh Circuit nevertheless rejected it. Moreover, an important similarity exists between the Rutledge situation and Roehl's situation. Rutledge's letter essentially followed the Illinois Statute which automatically restores rights after serving a sentence and was not individually tailored, which the Roehl court seemed to find important. The relevant Illinois statute states:

> A person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence. 730 ILCS 5/5-5-5(b).

A person sentenced to imprisonment shall lose his right to vote until his release from imprisonment. 730 ILCS 5/5-5-5(c).

On completion of sentence of imprisonment or upon discharge from probation, conditional discharge or periodic imprisonment, or at any time thereafter, all license rights and privileges granted under the authority of this State which have been revoked or suspended because of the conviction of an offense shall be restored unless the authority having jurisdiction of such license rights finds after investigation and hearing that restoration is not in the public interest. 730 ILCS 5/5-5-5(d).

The letter Rutledge received was not sufficiently individualized to trigger the "antimouse trapping" rule of § 921(a)(20).

While the approach used in *Roehl* was criticized in *Glaser,* it was not rejected outright. And even if it is held that *Roehl* is deemed to no longer be good law, it is of no import because Rutledge's claim fails under either approach. First, under *Glaser,* it is patently clear that the letter Rutledge received did not restore *all* his civil rights. Second, under *Roehl,* Rutledge's letter is a mere recitation of the statutory scheme enacted in Illinois and is not an individualized determination. For the above reasons, this Court concludes that Count IV should stand.

### 5. Trial Counsel Ineffectiveness with Respect to Count III

■ Rutledge argues that his counsel was constitutionally ineffective for failing to investigate his case, interview witnesses, and present an alibi defense with respect to Count III (distribution). The main thrust of Rutledge's argument is that his trial counsel failed to interview Kim Mummert, who would establish that he was elsewhere at the time of the alleged drug sale to Michael Wright, despite Wright's specific testimony that he had purchased a quantity of cocaine from Rutledge.

The Government responds that, at minimum, Rutledge must produce an affidavit stating the testimony each witness would have given at trial. *Wright v. Gramley,* 125 F.3d 1038, 1044 (7th Cir.1997). In the present case, Rutledge has not produced affida-

vits, despite having Mummert interviewed by a private detective, having another inmate telephone her and having sent a prepared affidavit for her to execute. In fact, the Government points out that Mummert in an affidavit has indicated that it was completely possible Rutledge sold cocaine during the month of January, 1989 and that it would have been possible for him to have distributed cocaine to Wright during that time.

Moreover, the Government argues that Rutledge's trial counsel attempted to discredit the testimony of Mummert in order to mitigate its damage. Mummert offered much evidence which incriminated Rutledge with respect to the continuing criminal enterprise and conspiracy drug charges. She was a main witness for the Government. Mummert was Rutledge's live-in girlfriend and gave a great deal of testimony which illustrated the scope of Rutledge's dealings in drugs. Defense counsel's strategy was to characterize her as an untrustworthy witness. This was a reasonable defense strategy. The continuing criminal enterprise charge and the conspiracy charge both potentially carry stiffer penalties than the mere distribution charge standing alone (as discussed below). Therefore, it would have been inconsistent to ask a jury to believe her testimony with respect to the alibi for Count III (distribution) while at the same time attempting to discredit her testimony which pertained to the more serious counts (CCE and conspiracy). It was in Rutledge's interest to try to discredit her rather than to formulate a defense strategy, the effectiveness of which would turn on her credibility. This Court "will not question counsel's choices among an array of reasonable trial strategies." *United States v. Moutry,* 46 F.3d 598, 605 (7th Cir.1995). This was a reasonable trial strategy.

The defendant must show that his trial counsel's performance fell below an objective standard of reasonableness and that but for the professional errors of his trial counsel, the outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674. This Court must "indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. 2052. The tactic Rutledge's trial counsel used was reasonable albeit ultimately unsuccessful.

### 6. Defendant Argues His Sentence Exceeds Maximum Sentence Proscribed Under 21 U.S.C. § 841(b)(1)(C)

█ Rutledge was sentenced to life without the possibility of release on Count III. Rutledge argues that under the statute he can only be sentenced to a term of imprisonment of not more than 30 years. 21 U.S.C. § 841. The Court agrees.

The Government indicates that there is a split of authority among the circuits as to whether a sentencing court can only consider the quantity of drugs found to be involved in the offense of conviction (*see United States v. Darmand,* 3 F.3d 1578, 1581 (2d Cir.1993)) or whether a court could consider "relevant conduct cocaine" and not just the amount of cocaine recovered at the defendant's arrest and alleged in the indictment (*see United States v. Reyes,* 40 F.3d 1148 (10th Cir. 1994)).

The Government concedes that the Seventh Circuit favorably cited cases which relied on the Second Circuit's view and concedes that:

> [F]or purposes of determining the defendant's sentence range under the guidelines, the Court should consider the entire five kilograms of cocaine the Court found attributable to the defendant. But for purposes of determining the defendant's statutory maximum sentence, the Court should not consider the relevant conduct quantity, only the quantity found to be involved in the offense of conviction for Count Three.

Government's Response to Petitioner's Supplemental Motion at 24.

Accordingly, Rutledge should be sentenced to the maximum of 30 years for Count III. The Government is ordered that this change appear in the proposed sentencing order.

### 7. Ineffective Assistance of Trial and Appellate Counsel

Rutledge makes many claims of ineffective assistance of counsel at both the trial and appellate level. The Court has carefully re-

viewed his claims. Except to the extent indicated above, the Court adopts the Government's position with respect to these issues.

### Conclusion

In conclusion, Count I(CCE) is vacated. Count II (conspiracy to distribute) is reinstated. Count III (distribution) remains viable, but the sentence imposed should be reduced to 30 years. Count IV (felon in possession of a firearm) remains. Count V (armed drug trafficker) is vacated but can be retried. Count VI (armed drug trafficker) is vacated.

Accordingly, Rutledge's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255[# 1] is GRANTED IN PART and DENIED IN PART. The Clerk is directed to prepare a new Sentencing Order which reflects the determinations made within this Order. Rutledge's Motion for Production of Telephone Recording [# 14] is DENIED. His Motion for Evidentiary Hearing [# 15] is DENIED. His Motion to Produce Statements by Michael Wright [# 21] is DENIED, and his Motion to Produce Statements by Kim Mummert [# 22] is DENIED. Respondent's Motion for Reconsideration of Court's June 18, 1998 prospective ruling [# 38] is DENIED. The Court will hold a telephone status call with counsel within 14 days to determine whether the United States wishes to pursue the retrial of Count V.